## INTERSTATE TRANSIT LINES *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 552.   Argued April 19, 1943.—Decided June 14, 1943.

---

*Mr. Nelson Trottman,* with whom *Mr. Joseph F. Mann* was on the brief, for petitioner.

*Mr. J. Louis Monarch,* with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr.,* and *Mr. Sewall Key* were on the brief, for respondent.

MR. JUSTICE REED delivered the opinion of the Court.

This case involves a claim by the taxpayer to treatment of itself and a subsidiary as a single taxable person. The writ of certiorari was granted because of uncertainties in this area of important federal tax law. See *Moline Properties* v. *Commissioner, ante,* p. 436, n. 1. Petitioner, Interstate Transit Lines, sought to deduct $28,100.66 as an ordinary and necessary business expense for the year 1936. § 23 (a), Revenue Act of 1936.[1] This sum represented a credit to its subsidiary, Union Pacific Stages of California, pursuant to a contract by which petitioner was to be liable for all operating deficits of the subsidiary. The claimed deduction was disallowed and a deficiency determined. The Board of Tax Appeals sustained the Commissioner and the Circuit Court of Appeals has affirmed the Board. *Interstate Transit Lines* v. *Commissioner,* 44 B. T. A. 957; 130 F. 2d 136.

---

[1] 49 Stat. 1648:

"Sec. 23. Deductions from Gross Income.

"In computing net income there shall be allowed as deductions:

"(a) Expenses.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . ."

Petitioner, a Nebraska corporation, operated an interstate bus transportation line between Illinois and California, and Missouri and Wyoming, and did an intrastate business in most of the states en route. Because of its foreign incorporation, petitioner was barred, under the California Railroad Commission's interpretation of California law, from obtaining a certificate of public convenience to do intrastate business in California. To avoid this situation, petitioner in 1930 organized Stages in California as its wholly-owned subsidiary to do the business it was unable to do. It contracted with Stages that Stages was to operate solely for petitioner's benefit and under petitioner's direction; all profits were to be paid to petitioner and it was to reimburse Stages for any operating deficit. In addition to its own intrastate business, Stages was to carry on all of petitioner's interstate business in California, the agreement providing that as each party's buses crossed the state line, the other became its lessee. The lessee was to pay the lessor five cents per mile operated by the bus in the lessee's custody. All this resulted in no change and no added expense in the business formerly done in respects other than accounting except for the addition to the gross revenues of the enterprise of the proceeds of intrastate California business. Petitioner kept Stages' accounts, managed its finances and paid its bills and payroll. Each month petitioner apportioned between the two companies the revenues and expenses on the basis of passenger and traffic mileage. On the books of each a "clearing account" with the other showed the absorption by petitioner of Stages' annual deficit or profit. It is the 1936 operating deficit of Stages, entered on the books of both on December 31 of that year, which petitioner now seeks to deduct as its business expense. Some years after 1936, by reason of a change in California law or its interpretation, petitioner became able to conduct intrastate

business in California. Consequently Stages was dissolved and its assets and franchises transferred to petitioner. In 1932 and 1933, consolidated income tax returns were filed by petitioner pursuant to § 141 of the Revenue Act of 1932, 47 Stat. 169, 213.

Whether phrased as the payment of an expense in a business conducted for a principal by an agent or as a case where equity and reality require that the separate corporate identities be ignored or as the incurring under contract of a necessary expense, petitioner's argument for its success depends on the contention that Stages' operating deficit is an expense of petitioner's business. Without this keystone the entire argument must fall. And we examine the argument in the light of the now familiar rule that an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer. *New Colonial Ice Co.* v. *Helvering,* 292 U. S. 435, 440; *Deputy* v. *du Pont,* 308 U. S. 488, 493. The decision of the two courts below is that this burden has not been met.

This is not the case of a mere branch or division of a business conducted solely for convenience' sake under a separate corporate form. Petitioner did an interstate bus business and was a corporation foreign to California. On the other hand, the business of Stages in the tax year in question was both interstate and intrastate. For petitioner to engage in intrastate business in California was, on the findings, illegal. Thus, the businesses of the two companies were distinct. Cf. *Edwards* v. *Chile Copper Co.,* 270 U. S. 452, 454, 456; *Texas-Empire Pipe Line Co.* v. *Commissioner,* 127 F. 2d 220. Even assuming that the interstate business of Stages could be the business of the petitioner,[2] it follows that at most only that part of

[2] Cf. *Moline Properties* v. *Commissioner, ante,* p. 436; *Higgins* v. *Smith,* 308 U. S. 473, 477, n. 8-10.

the deficit attributable to Stages' interstate business could be an expense of petitioner's business and petitioner could not conceivably deduct as a business expense the cost of Stages' intrastate business. There was no showing below as to the allocation of the deductions sought as between Stages' intrastate and interstate business. There is thus no record requiring a further examination of petitioner's argument since in the absence of affirmative proof to the contrary we must assume that the entire deficiency was found correctly by the Commissioner and that the deficit is attributable to Stages' intrastate business.

It is no answer to this defect of proof that petitioner was obligated by contract to assume Stages' deficit. The mere fact that the expense was incurred under contractual obligation does not of course make it the equivalent of a rightful deduction under § 23 (a). That subsection limits permitted deductions to those paid or incurred "in carrying on any trade or business." The origin and nature, and not the legal form, of the expense sought to be deducted determines the applicability of the words of § 23 (a). *Deputy* v. *du Pont, supra,* 494. It was not the business of the taxpayer to pay the costs of operating an intrastate bus line in California. The carriage of intrastate passengers did not increase the business of the taxpayer. The profit earned on their carriage increased the taxpayer's profit but so would any other profitable activity wholly disconnected from the taxpayer's own business. As the Circuit Court pointed out, the assumption of the deficit was not dependent upon a corresponding service or benefit rendered to the petitioner by Stages in connection with petitioner's business. 130 F. 2d 136, 139.

In view of these conclusions, it is unnecessary to characterize the payment by petitioner as a capital expenditure or otherwise, or to decide whether if the record were complete petitioner and Stages should be treated as a

taxable entity for the claimed purpose. Cf. *Moline Properties* v. *Commissioner, ante,* p. 436.

.*Affirmed.*

MR. JUSTICE JACKSON, dissenting:

This taxpayer operated a bus system between Chicago and Los Angeles. It could not pick up intrastate passengers in California, as it did elsewhere, because the State denied foreign corporations permission to do so. In order to obtain local traffic to help carry the cost of operating the interstate buses, taxpayer organized a wholly-owned and dominated California subsidiary. This contented the local authorities, and it was granted permission to carry local business. It took over buses arriving at the state line, operated them in California, thus performing a part of the taxpayer's agreements of through carriage and benefiting from local traffic to reduce the cost. It was a common-sense business arrangement, for the purpose of making its business profitable.

The taxpayer made a contract with the subsidiary, by which the subsidiary undertook the service; the parent company became entitled to the profits and assumed the losses. The taxpayer agreed to reimburse the subsidiary for any operating deficit. This, too, was a common-sense business arrangement. To pay its wholly-owned subsidiary more would be pointless, for it would only come back. To pay it less would result in its bankruptcy to the injury of creditors. So the taxpayer agreed that the operating deficits should be the measure of its contractual obligation to the subsidiary.

There is no suggestion that this arrangement was for tax avoidance, or for that matter that it did not actually reduce taxpayer's costs and thus increase its tax liability. The Commissioner ruled, however, that the amount of operating deficit paid by the taxpayer was not a business expense.

To require the Commissioner in all cases to allow a deduction so fixed might be turned by the unscrupulous to tax-evasion ends. It could then, through its controlled subsidiary, make expenditures not properly allowable as business expense, but get them allowed as part of the deficit assumed by contract. Of course the Commissioner is not obliged to allow this, or any other arrangement, when it is used as a cover for tax skullduggery. Examination of the items is open to the Commissioner. But this deduction has been denied, not for such reasons, but upon a legal theory which I think is erroneous.

The taxpayer took inconsistent positions: first, that the corporate entity of the subsidiary should be disregarded and the two companies taxed on a consolidated basis; second, that the amount was a proper deduction under the contract, which of course implies existence of two parties to contract. The Government, not to be outdone in the matter of inconsistency, denied the separate entity theory and also disregarded the contract, and argues to us "the contract of the taxpayer to make good Stages' operating deficits is one pervaded by the stockholder-corporation relation. Any contribution to Stages under this contract must therefore be regarded as incident to the taxpayer's stockholder status." So the Government says the payment was not a compensation for services which the contract provides that it was, but was a "capital contribution" which the contract says it was not.

I think there is no merit in the taxpayer's theory that the Commissioner must disregard the corporate entity of the subsidiary. If a taxpayer itself creates and uses a corporation, he cannot require the Commissioner to say it isn't there.

But on the other hand, if the Commissioner says there are two entities, it would seem that they would be able to contract with each other, one to perform a service and the other to pay a price. The service may be, and often is,

one that the taxpayer could not perform for itself, but if it is hired to build up its business, I see no reason why its proper cost is not a business expense deduction. The price need not be a fixed one, but may be determinable by costs or other contingencies; but when fixed, its amount (barring use as a device to evade) is the amount of the deduction. Cost or "cost plus" is one of the Government's own methods of contracting. It is not an illicit method for a taxpayer to employ.

But it is urged that since the taxpayer could not itself pick up local business under California law, it cannot be the business of the taxpayer in a legal sense to have a subsidiary do so, and disbursements to have local business brought in are legally foreign to its business, although for its benefit. I do not suppose the taxpayer corporation can itself legally practice law or medicine, but I would suppose if it needed legal service for its business or thought it good business to supply medical attention to injured or ailing employees, the cost would be a business deduction, even though the agent was doing what the taxpayer could not legally do for itself. The taxpayer may not be authorized to run a newspaper or put up billboards, but if it contracted for services of those who are, in order to fill vacant seats in its buses, I do not suppose its cost would be disallowed for that reason.

This company has not violated the law, even of California. Indeed, it went to this trouble to comply with it. The fact that it used a subsidiary to benefit its business in areas where its own competence was lacking can hardly invalidate the arrangement, particularly since it is insisted that the subsidiary had separate legal and tax existence. If states create dummies, business men may utilize them so long as they keep within the law, and the function of the revenue laws is not to tell them how they shall manage business, but to see that what they do has proper tax consequences.

Since the decision of this case the Tax Court has held in a very similar case that where a wholly-owned subsidiary exclusively performs services essential to the business of the parent corporation, advances made by the parent to meet the subsidiary's operating deficit are deductible as a business expense. Texas & Pacific Ry. Co. *v.* Commissioner, No. 105730, March 25, 1943. I think this is a correct rule. Judge Harron there avoids the force of this case only upon the ground that the parent corporation here could not itself engage in the business done in its behalf by the subsidiary. That distinction is good enough to get the Tax Court away from a bad rule, but I see no reason why such a deduction should be available in case of an unnecessary subsidiary and be refused in the case of one needed to comply with state laws in making a profitable enterprise. I would reverse.

The CHIEF JUSTICE and MR. JUSTICE MURPHY join in this dissent.