## Eskimo Pie Corporation, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 2379.   Promulgated January 31, 1945.

*Ewing Everett, Esq.*, for the petitioner.
*Francis X. Gallagher, Esq.*, for the respondent.

674

OPINION.

ARUNDELL, *Judge*: Two deductions are sought by petitioner. First is the interest on that part of the debts of petitioner's New York subsidiary which petitioner had guaranteed, and the second is the royalty payments described in some detail in our findings of fact. The first item petitioner seeks to deduct as interest qua interest, but in the alternative it seeks the deduction as an ordinary and necessary expense. Deduction of the royalty payments is likewise sought as an ordinary and necessary expense.

Petitioner has guaranteed the payment of 30 percent of the principal indebtedness of its New York subsidiary held by Foil, Metals, and Reynolds, and has undertaken to pay interest at the rate of 3 percent per annum thereon until the principal sum is paid. During the taxable years petitioner's liability was purely contingent; the indebtedness was that of the subsidiary and not petitioner; and the interest which it accrued and seeks to deduct was interest on the indebtedness of another. The statutory deduction for interest is confined to amounts chargeable against the taxpayer on his own indebtedness, and he may not deduct interest on the indebtedness of another, even though he has by legal contract agreed to pay such interest. *William H.*

*Simon,* 36 B. T. A. 184; *Orange Securities Corporation,* 45 B. T. A. 24; *William Ainslie Colston,* 59 Fed. (2d) 867; certiorari denied, 287 U. S. 640; *Caldwell & Co.,* 26 B. T. A. 790; affd., 65 Fed. (2d) 1012; *Automatic Sprinkler Co. of America,* 27 B. T. A. 160.

Petitioner's alternative argument, that the interest is deductible as an ordinary and necessary expense, we believe is likewise without merit. We think the terms of the contract of June 1, 1937, make this clear. Petitioner had an investment in its New York subsidiary of approximately $3,000,000, the subsidiary was at the time insolvent, and if the creditors pushed their claims petitioner's entire investment in that company would be sacrificed. It is true that petitioner was likewise interested in securing a licensee for the metropolitan New York area, but that it would have obligated itself to the extent it did if it had been dealing with a total stranger is at least problematical. It was guaranteeing debts of some $300,000 to $400,000 and under the circumstances here the benefits of the contract flowed directly to the New York subsidiary and not to petitioner. As a result of the undertaking New York Eskimo Pie was renting its plant and property for a substantial sum and it was given at least a breathing spell by its creditors. Payments made by a stockholder of a corporation for the purpose of protecting his interest therein must be regarded as additional cost of his stock and such sums may not be deducted as ordinary and necessary expenses. *W. F. Bavinger,* 22 B. T. A. 1239; *Michigan Central Railroad Co.,* 79 Fed. (2d) 427, affirming 28 B. T. A. 437, 444, on this point. We do not believe it could be seriously argued that, if petitioner were required to make good on its guaranty to the extent of hundreds of thousands of dollars, under the circumstances here present, it could claim such sums as ordinary and necessary expense, and yet, in our view of the case, the interest stands on no better ground than the principal sums guaranteed. It is, of course, true that upon winding up the whole investment petitioner might well have a loss, but that is another matter and both the time of the deduction and the extent of the deduction would be governed by other sections of the Internal Revenue Code. Even if we accept petitioner's premise that the securing of a licensee was a consideration for its undertaking to guarantee the debts and pay the interest thereon, there is nothing in this record which would permit of an allocation of the interest payments between the protection of petitioner's equity in the New York company and the securing of a licensee. *Sentinel Realty Co.,* 19 B. T. A. 991; *Houston Natural Gas Corporation* v. *Commissioner,* 90 Fed. (2d) 814.

There remains for disposition the question whether the royalty payments may be deducted as ordinary and necessary expense. At the outset it is well to have in mind the relationship which exists between

the several parties to the contract of June 1, 1937. All of the stock of Metals to which the royalties were to flow directly was owned by Foil; Foil owned all of the voting stock of petitioner and some of the preferred shares; and R. S. Reynolds and his family controlled Foil. Foil had acquired its stockholdings in petitioner from four individuals under a contract which provided that payment for the shares be in the form of royalties rather than at an upset price. Metals, when it entered the picture, assumed the manufacturing contract of Foil and agreed to pay the latter a sum sufficient for it to pay the royalties to the four individuals. The royalties in question which are sought to be deducted by petitioner are in a sum equivalent to the obligation of Metals to Foil and Foil to the four individuals.

It is not questioned by respondent, and we do not question the fact, that petitioner became obligated to make these so-called royalty payments by reason of the contract of June 1, 1937. The mere fact that an expense was incurred under a contractual obligation, however, does not make it the equivalent of a rightful deduction under section 23 (a). *Interstate Transit Lines* v. *Commissioner*, 319 U. S. 590. The Supreme Court has ruled that a voluntary payment of an obligation of another is not "ordinary" within the meaning of the statute. *Welch* v. *Helvering*, 290 U. S. 111; *Deputy* v. *DuPont*, 308 U. S. 488.

At the time the contract of June 1, 1937, was entered into there was no outstanding obligation on the part of petitioner to make royalty payments to Metals or Foil. The expiration date of the last written contract calling for such royalty payments was January 31, 1936. The basis for the renewal of this obligation is set forth in the June 1, 1937, contract and appears to be grounded on the close relationship existing between the several parties to the agreement and what Metals and Foil have done from time to time for petitioner. The provision in the contract calling for payment of royalties appears to be a statement of what the parties regard as a fair thing to do in the circumstances, considering it is a transaction between closely related companies. In the final analysis it calls upon petitioner to collect from its licensees and pay Metals a sum of money equal to that which Foil was obligated to pay the individuals in connection with the acquisition of the shares in petitioner. Surely this is not an ordinary and necessary expense of carrying on petitioner's trade or business. Except for the close relationship of the parties, it seems hardly conceivable that such an agreement would ever have been entered into. It would have been in any circumstance an unusual thing for a company owning the trade-marks and patents to pay royalties to some other company for their use rather than to be receiving royalties.

If the payment of these royalties be regarded as a further consideration for the agreement to refrain from pushing the claims against New

York Eskimo Pie and the benefit to be derived from securing a licensee in the metropolitan area, the answer we have reached with reference to the deductibility of the interest is equally applicable here.

On both points the determination is affirmed.

*Decision will be entered under Rule 50.*