OPINION. Rice, Judge: We must decide whether petitioner may properly deduct as losses under section 23 (e) of the Internal Revenue Code of 1939[1] amounts expended by him in excess of the prices provided by construction contracts which he entered into with his wholly owned corporations. Petitioner is an individual with many years of experience in the construction business; and, during the years here in issue, he was actively engaged as a building contractor. He was also the sole common stockholder, president, and member of the boards of directors of two corporations engaged in the development of rental housing projects. Petitioner’s investment in these corporations was small in relation to the total sums required to accomplish their objectives. Although not specifically set out in the record, it appears that his investment in Frederick Courts, Inc., was less than $100,000. As for Parkwood, Inc., petitioner paid a total of $500 for his stock in that corporation. The two housing projects were to be financed principally by Federal Housing Administration insured loans of $1,256,000 and $1,772,000, respectively. Petitioner, in his capacity as an independent housing contractor, entered into contracts with each of the corporations to construct their projects for the sums of $1,163,640 and $1,662,200, respectively. However, in each project his costs proved to be in excess of the contract price. Frederick Courts, Inc., obtained an additional Federal Housing Administration insured loan of $102,100, and amended petitioner’s contract to provide for the payment of an additional $100,000 to him. After petitioner had completed work on the project, he presented a $50,000 bill for extras to the corporation and was voted this sum, payment to be made “when funds are available.” All or most of this $50,000 was paid to petitioner by I960. After petitioner had completed the Parkwood, Inc., project, he informed that corporation that bis costs exceeded the contract price by over $100,000, “due in part to furnishing materials of a superior quality to that called for by the plans and specifications.” He was voted an additional $96,372.80, payment to be made “when funds are available.” Despite these increases in the contract prices, petitioner still had unreimbursed costs on the Frederick Courts, Inc., and Parkwood, Inc., projects in the respective amounts of $130,635.15 and $15,621.32. He contends that these amounts should be deductible as losses under section 23 (e), arguing that the contracts were entered into with the intent to realize a profit, that a substantial part of the excess costs was due to bad weather conditions and material shortages which provided no economic benefit to the corporations, and further, that the corporations were unable to reimburse him for these excess costs. Petitioner and respondent agree that section 24 (b) (1) has no application in the instant case inasmuch as no “sale or exchange of property” occurred here. However, that section is not exclusive in the disallowance of losses between related taxpayers. If “good faith and finality” are lacking in a transaction between related taxpayers, purported losses must be disallowed even though not specifically covered by section 24 (b) (1). Crown Cork International Corporation, 4 T. C. 19 (1944), affd. 149 F. 2d 968 (C. A. 3, 1945). The burden of proof is on the taxpayer to establish a deductible loss. Burnet v. Houston, 283 U. S. 223 (1931). Moreover, transactions between a sole stockholder and his wholly owned corporation are subject to special scrutiny. We do not mean to imply that all losses incurred by taxpayers in dealings with their wholly owned corporations are nondeductible because of the difficulty or impossibility of maintaining an arm’s-length relationship. But where, as in the instant case, the record clearly shows that a taxpayer did not maintain an arm’s-length relationship in his dealings with his wholly owned corporation, his purported losses must be disallowed. The profit motive appears to have been a very minor element in these construction contracts, if present at all. The record herein clearly indicates that petitioner voluntarily supplied materials of a better grade than called for by the contract specifications. This was done not to benefit himself as an individual contractor but, rather, to benefit himself in his capacity as sole stockholder of the corporations. Excess expenditures caused by the use of such materials produced no economic loss since petitioner realized offsetting benefits through the increase in value of his common stock in the two corporations. In Higgins v. Smith, 308 U. S. 473 (1940), the Supreme Court disallowed a loss claimed by a sole stockholder when he sold securities to his wholly owned corporation at a price less than his basis. The Court pointed out that the transfer was executed as a tax-minimizing device and that the taxpayer retained domination and control over the securities even after the transfer, stating at page 476: Indeed this domination and control is so obvious in a wholly owned corporation as to require a peremptory instruction [to a jury] that no loss in the statutory sense could occur upon a sale by a taxpayer to such an entity. Referring to Gregory v. Helvering, 293 U. S. 465 (1935), the Court stated, at pages 476 and 477: If, on the other hand, the Gregory case is viewed as a precedent for the disregard of a transfer of assets without a business purpose but solely to reduce tax liability, it gives support to the natural conclusion that transactions, which do not vary control or change the flow of economic benefits, are to be dismissed from consideration. There is no illusion about the payment of a tax exaction. Each tax, according to a legislative plan, raises funds to carry on government. The purpose here is to tax earnings and profits less expenses and losses. If one or the other factor in any calculation is unreal, it distorts the liability of the particular taxpayer to the detriment or advantage of the entire tax-paying group. Subsequently, in Crown Cork International Corporation, supra, involving a loss claimed to have been sustained by a corporation on the sale of securities to its wholly owned subsidiary, we applied the following rule, page 23: - Not all transactions between a wholly owned corporation and its parent are to be disregarded. But where either the relationship between the two is such that they are in fact inseparable, so that the individual existence of the two entities is an unsupported fiction and the “finality” of the loss to the combined enterprise is consequently negatived, cf. Interstate Transit Lines v. Commissioner, 319 U. S. 590, or the transaction itself is without a true purpose except that of tax avoidance, so that its effectiveness to “change the flow of economic benefits,” its “good faith,” as an incident of the conduct of a business, is suspect, cf. Wickwire v. United States (C. C. A., 6th Cir.), 116 Fed. (2d) 679, then taxpayers have failed to show themselves entitled to the benefit of the loss. In tbe instant case, petitioner argues tbat he lacked complete control over the corporations because of the rights and powers of the Federal Housing Administration as guarantor of the corporations’ mortgages. However, after an examination of the various agreements entered into it is obvious that petitioner retained complete control over the corporations’ activities. The Federal Housing Administration held' no stock in Parkwood, Inc., and, as to Frederick Courts, Inc., only if that corporation had defaulted on the payment of its mortgage would the Federal Housing Administration have been given control over its activities.' The sole exception appears to be that the Federal Housing Administration had certain powers with respect to the disbursement of the guaranteed loans. This fails to support petitioner's argument, since he received almost the entire amount of such loans and his complaint is that there were not more of them. The corporations were clearly his alter ego since their officers and directors, elected by him, were all individuals employed by him in his contracting business in various subordinate capacities. When ho found that his costs were in excess of the contract price, he caused the corporations to increase the contract price. Frederick Courts, Inc., was able to obtain an additional loan of $102,100, and voted petitioner $100,000 of this immediately. Subsequently, petitioner was voted $50,000 by Frederick Courts, Inc., and $96,372.80 by Parkwood, Inc., such sums being payable “when funds are available.” Had petitioner wished, he could undoubtedly have caused the corporations to establish additional accounts payable for the remainder of his excess costs which are now before us. Having failed to do so, he must be regarded as having made additional contributions to the capital of each of the corporations, and the amount of the excess costs is to be added to his basis for the stock. Since the corporations were petitioner’s alter ego and the transactions herein were not at arm’s length, it is immaterial whether the excess costs were due to the use of more expensive materials than required by the specifications, rising labor costs, or bad weather conditions. We need not determine whether all such expenditures produced true economic benefits to the corporations. For, whatever their economic value, the excess expenditures over the amended contract prices were, on the facts of this case, capital contributions which increased the basis of petitioner’s stock. Having determined that such excess costs are capital contributions, it is unnecessary to discuss petitioner’s last argument relating to the inability of the corporations to promptly reimburse petitioner for such excess expenditures. Reviewed by the Court. Decision will he entered under Bule 50. SEC. 23. deductions FROM GROSS INCOME. In computing net income there shall be allowed as deductions : ******* (e) Losses by Individuals. — In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise— (1) if incurred in trade or business ; * * *