Arthur L. Elkin and Ruth Elkin v. Commissioner.
Elkin v. Commissioner
Docket No. 84572.
United States Tax Court
T.C. Memo 1961-320; 1961 Tax Ct. Memo LEXIS 29; 20 T.C.M. (CCH) 1657; T.C.M. (RIA) 61320; November 24, 1961
*29 Petitioner was sales manager of a branch office in a company engaged in the manufacture and sale of home heating equipment. During the taxable year 1957, the branch employed about 210 employees, including 160 door-to-door canvassers. Petitioner was entitled to the retail net profit of the branch, which represented retail sales prices less standard branch prices (cost of merchandise sold to branch by manufacturers) and all expenses. Of the total of $38,313.69 claimed by petitioner on his 1957 income tax return as branch expenses, respondent disallowed $14,703. This amount was arrived at by petitioner on his return on the basis of checks cashed by him in the aggregate amount of $19,604 less $4,901 attributed by him to "personal use" leaving a net claimed "business expense" deduction of $14,703. Petitioner, by amended petition, increased the amount claimed based on this item to $15,250 and asserted that he was thereby entitled to a refund. Held: That with respect to the "cashed checks" item, the principles announced in Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930) are applicable, and, in accordance therewith, a deduction of $6,356 is allowable to petitioner as ordinary *30 and necessary expenses. Held, further, that petitioner has failed to meet his burden of proof with respect to the remaining amounts claimed with respect to the "cashed checks" item; that respondent's disallowance is to that extent sustained, and that petitioner's claim of overpayment is not supported by the record. Thomas J. Donnelly, Jr., Esq., for the petitioners. Jay B. Kelly, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: The sole issue presented for our consideration is whether and, if so, in what amount, checks, totaling $19,604 cashed by petitioner during the taxable year 1957, are deductible as ordinary and necessary business expenses under section 162 of the 1954 Code. The statutory notice made an adjustment for interest income which is not contested. *31 Findings of Fact Petitioners, Arthur L. and Ruth Elkin, reside at 8810 West 123rd Street, Palos Park, Illinois. They filed a timely joint Federal income tax return for the calendar year 1957 with the district director of internal revenue at Chicago, Illinois. Ruth is named as a petitioner herein only because she filed a joint return with Arthur, who will be referred to hereinafter as petitioner. In 1957, petitioner was employed as a sales manager of the Holland Furnace Company, Holland, Michigan, (hereinafter called Holland) for its Chicago, Illinois, Branch Office No. 4. Holland is engaged in the manufacture and sale of home heating equipment. The branch offices solicit sales of new equipment and furnace repair business by door-to-door canvassing in residential areas. The service salesmen or door-to-door canvassers worked in groups of approximately eight under the supervision of a more experienced salesman. The canvassers would uncover a sales lead, but were not allowed to close any sales. The "closer" or service engineer would attempt to make the sale. During 1957 approximately 15 "closers" or service engineers were employed by the Chicago Branch Office No. 4. Petitioners' *32 joint Federal income tax return for 1957 was prepared by accountants. The sources of their information were Form W-2, Form 1099, cancelled checks drawn to cash in the total amount of $19,604, bills, and memoranda supplied by petitioner. The accountants did not see any books or receipts supporting the deduction of said "cash checks" for the purpose stated in petitioners' income tax return. During 1957, petitioner, pursuant to the terms of a written agreement, was paid a salary, an "override" based on a percentage of sales, and an annual bonus. The bonus was in fact the retail net profit of the branch, representing retail sales price less standard branch price (cost of merchandise sold to branch by manufacturer) and all expenses. The branch manager received two-thirds of the bonus within 60 days after the end of the current calendar year and the remaining one-third by the end of the ensuing year. An expense charge was collected by Holland from the branch for any advances or other charges to branch net sales. The charges averaged out at about 2 1/2 percent of the advances for 1957. Expenses incurred in the operation of Chicago Branch Office No. 4 during the year 1957 totaled $324,428.69. *33 Holland's expense charge totaled $8,413.41 for that year, which amount was deducted from branch net sales. Expenses incurred in operating the branch, such as advances to salesmen, entertainment expenses for salesmen, prizes for salesmen, or miscellaneous charges to particular branch account expense classifications, were reimbursed to petitioner if he requested reimbursement from the home office and furnished satisfactory substantiation. If petitioner had requested it, the expenses claimed on his return for 1957 in the amount of $38,313.69 would have been reimbursed to him by Holland, if substantiated, except an item for auto expense in the amount of $1,612.09. Said expenses in the amount of $38,313.69 include expenses for which petitioner was reimbursed in the amount of $10,400.12. These amounts are reflected on petitioner's Form 1099. Included in the aforesaid $38,313.69 are the following business expenditures, inter alia, which were allowed as such by respondent for the operation of petitioner's branch office during 1957. Children's Christmas - employees'
families
$ 97.47
Christmas gifts to employees
1,039.85
Coffee break for employees
415.22
Coveralls for men
203.22
Entertainment - salesmen
560.94
Merchandise for sales prizes
1,033.13
Advance to salesmen not recovered
6,161.11
Total
$9,510.94
*34 Petitioner knew that he was required to keep records to substantiate business expenses for income tax purposes. Petitioner maintained a record in his office of debits and credits for each salesman employed by his branch. In some instances when petitioner made a loan or advance to a salesman, he instructed his secretary to make a notation thereof. He also kept a little black book in which he recorded some of the loans he made to his salesmen. In those instances where petitioner made loans or advances to salesmen by check, petitioner was reimbursed by Holland, and the salesmen's income accounts were charged with the advance. During 1957 such reimbursements to petitioner totaled $751.92. Records of Holland's main office show that there were at various times during 1957 about 210 employees at the Chicago Branch No. 4 office. Petitioner did not hire all of these men. An average group of 40 salesmen worked under petitioner during 1957. They were paid by the home office on a commission basis with a guarantee of $75 per week. A newly hired salesman of the branch office was not reported to the home office as an employee for about three days after he started to work. Some of those employed *35 by the branch office would not remain with the firm more than three weeks. Some of the new salesmen did not remain with the branch office more than a few days, and, hence, were not placed on the payroll of the home office. During 1957 petitioner cashed 118 checks payable to cash in amounts ranging from $13 to $2,000. Said checks were cashed at the following places: Place
Total Amount
Currency Exchanges
$ 5,600
Banks
800
Cinderella Lounge
6,660
Merrill Liquors and A. Andrews
490
Holland Furnace Company
3,171
Others
2,883
Total
$19,604
Included among the cashed checks were one of $2,000, one of $1,000, one of $700, one of $693, five of $500, five of $300, one of $238, one of $215, 22 of $200, 15 ranging from $125 to $150, 29 of $100, and 35 ranging from $13 to $70. In March or April 1957 petitioner and his wife vacationed in San Juan, Puerto Rico, for approximately five days, and several days were also spent in Miami, Florida. Petitioner and his wife stayed at the Caribbean-Hilton Hotel in Puerto Rico. On March 7, 1957, petitioner cashed the check for $2,000 referred to above. Expenses of the trip to Puerto Rico were paid in cash. The cost of the *36 aforesaid vacation trip was not reflected in petitioner's summary of personal living expenses. Petitioner has five children and owns his own home free of any indebtedness. During 1957 he purchased four or five automobiles. During 1957 petitioner bought packaged liquor to take home and over a week-end would usually take home two or three bottles. Petitioner was a member of the South Shore Country Club in 1957, and the club dues were $40 per month. Dues paid to the club are not reflected in petitioner's summary of personal living expenses for 1957. On January 9, 1957, petitioner cashed the check for $1,000 referred to above. It was endorsed by E. C. O'Brien, a tavern keeper. O'Brien's Tavern is located approximately three and one-half miles from the Cinderella Lounge and the branch office of Holland. Petitioner spent considerable time at O'Brien's Tavern, maintained a bar bill there, and also purchased packaged liquor there. During 1957 petitioner cashed checks in the total amount of $2,243 at O'Brien's Tavern. The Cinderella Lounge is a tavern located at 754 West 74th Street, Chicago, Illinois. Petitioner visited the Lounge five to seven days a week during 1957, and was *37 there at various times between 8:00 a.m., and closing time, 2:00 a.m. Petitioner's salesmen did not drink during the morning hours. Petitioner would occasionally buy drinks for individuals who were in the Lounge. Salesmen from the Chicago Branch No. 4 office were sometimes in the tavern when petitioner was there. During 1957, petitioner cashed checks payable to cash in the amount of $6,660 at the Cinderella Lounge. Petitioner, from time to time during 1957, bought drinks and food for himself and employees at other bars and lounges. Petitioner also gave incentive presents, including bottled liquor and cash, in unascertained amounts, to employees of Branch No. 4 during 1957. Ultimate Findings of Fact Of the total $19,604 of cashed checks in 1957, the total amount of $6,356 was spent by petitioner to buy food and drinks, and used to make presents (including bottled liquor and cash) to employees of Branch No. 4 as an incentive to increased efforts in carrying on the business of Branch No. 4. Opinion Respondent determined that the amount of $14,703 designated as "business expense" and deducted by petitioners on their return for the taxable year 1957 did not constitute ordinary *38 and necessary expense under section 162 [1] of the 1954 Code. Essentially, it is respondent's position that said amount has not been substantiated as having been actually disbursed in carrying on petitioner's trade or business. Respondent, properly we think, does not argue that the business expenses in question, to the extent otherwise allowable, should have been deducted by Holland rather than petitioner. Petitioner was entitled to the net profits (bonus) of the branch, and the payment of such expenses reduced his net profits whether he or Holland paid the expenses in the first instance. To the extent that petitioner was reimbursed by Holland, the reimbursed amounts were charged back to the expenses of the branch (plus a small service charge not here significant) and the net result was the same as if petitioner had paid them. Since no issue is raised in this connection, we need not discuss such cases as Earl M. Coplon, et al., v. Commissioner, 227 F. 2d 534 *39 (C.A. 6, 1960), affirming a Memorandum Opinion of this Court, which arose under quite different facts. With respect to the deductions in issue, the burden rests with petitioner to establish that the claimed expenses were actually paid, and were both ordinary and necessary to petitioner's business. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943); Deputy v. DuPont, 308 U.S. 488, 493 (1940). A disallowance of the claimed deductions by respondent in his statutory notice carries a presumption of correctness, and casts upon petitioner the burden of proving error. Birnbaum v. Commissioner, 117 F. 2d 395-396 (1941) (C.A. 7, 1941), affirming a Memorandum Opinion of this Court. Section 1.162-17(c) and (d)(3), Income Tax Regs.[2]
*40 Reasonable expenditures for providing entertainment or otherwise looking to increase the incentive of employees may be allowed as deductions from gross income to the extent that they are reasonably calculated to be a business benefit to the taxpayer. Popular Dry Goods Co., 6 B.T.A. 78, 82 (1927). Whether such expenditures are ordinary and necessary caises primarily a question of fact, and the issue is to be resolved according to the particular circumstances of each case. Commissioner v. Heininger, 320 U.S. 467, 475 (1943), affirming 133 F. 2d 567 (C.A. 7, 1943). Preliminarily, we note that petitioner's income tax return for the year in question reported under the heading "Business Deductions," cash checks totaling $19,604, from which petitioner subtracted 25 percent, or $4,901 as "personal use," and carried forward the difference ($14,703) as a deduction. Petitioner, on brief, now claims a deduction for business expenses totaling not less than $15,250, or not less than $547 in excess of the net amount claimed in his return in this respect and disallowed by respondent. Moreover, in addition to asserting that there is no deficiency, petitioner *41 now claims a refund in the amount of $2,264.28. The facts with respect to deficiency and claim for refund are interrelated, and will be considered together. We may state at this point, however, that the record totally fails to support the allowance of a refund. The issue here presented is whether or not petitioner has adequately substantiated the payment of ordinary and necessary business expenses in excess of those which have already been allowed by respondent as deductions. Of the $38,313.69 claimed by petitioner on his 1957 return as business expenses, respondent disallowed only $14,703, arising out of the catchall deduction referred to in the return as "cash checks." In essence, it is petitioner's position that because of the instability of his working force and the need for incentives apart from wages, checks were cashed in the amount of at least $15,250 and spent for meals, liquor, entertainment, presents, prizes, and cash payments to induce employees of his branch office, particularly salesmen, to remain with the company, and that his failure to keep any records of said expenditures was due to imprudence. Petitioner admittedly was aware of the requirement to keep adequate *42 records to substantiate business expenses and had had difficulties with the revenue service on the same score in earlier years. He maintained detailed records of expenditures ($10,400.12), some of which were comparatively small (viz., $6.46 advance to B. R. Everett, and $6 for flowers to employees) for which he was reimbursed; yet, for other similar items of expense, he kept nothing more than cancelled checks drawn to cash. Apart from his vague testimony, petitioner has presented little practical means by which we can verify or estimate the amounts allegedly disbursed for incentive purposes. Petitioner did not testify in detail with respect to the cash checks involved, but simply stated in general terms that the cash he obtained on the checks was spent to maintain a stable working force. See Hiram C. Wilson, 17 B.T.A. 976, 979 (1929). Petitioner contends nevertheless, that he spent, inter alia, $6,400 for meals, $4,750 for liquor, $2,000 for guarantee payments and advances, and $1,500 for prizes and gifts on said employees during that year. While we think the evidence supports the fact that a substantial part of the cashed checks represented incentive expenditures made *43 by petitioner and qualify as ordinary and necessary expenses of his business, petitioner has failed to substantiate his claim that an even more substantial part of said expenditures were made for the purposes indicated. Moreover, an analysis of the cashed checks supports the inference that much of the proceeds of such checks were not spent for the purposes claimed. The total amount of the cashed checks in 1957 was $19,604. On his return, petitioner reduced this amount by $4,901 to reflect personal expenses, and claimed as a deduction only the balance, or $14,703. He now claims, in effect, that the $4,901 was an arbitrary figure, in excess of the actual personal expenses, and that he spent for business purposes the sum of at least $15,250 instead of the $14,703 claimed as a deduction. Since we consider the factor of personal expenses in our discussion, infra, and since petitioner, in effect, repudiates the item of $4,901, we approach an analysis of the cashed checks from the total figure of $19,604. We first consider the checks ranging from $2,000 to $500, inclusive. As to the $2,000 check, petitioner had no recollection as to what the proceeds were used for. He admitted that *44 it was cashed about the time of the trip to San Juan and Miami. He admitted that the trip was paid for in cash. Still later, he admitted that the proceeds could have been used to pay for the trip. He suggested no other source of funds for this purpose. The check was in round figures, and in an amount totally unrelated to the kind of incentive payments he claimed to have made. As to the $1,000 check, petitioner again had no recollection and could furnish no explanation. Later, he suggested that he had spent $1,000 in 1957 for medical expenses for his wife. Such expenses are obviously personal, and no issue of medical expense deduction is presented. Again, the check was in round figures and unrelated in amount to the type of incentive payments claimed by him. Petitioner also cashed a check $700for, one of $693, and five of $500. All are inconsistent in amount with the incentive payments. All but one were in round figures. Petitioner recalled nothing about their use, and could offer no explanation except that, as to the $693 check, it might have been that he had needed $600 and owed $93. He had no recollection as to any specific use of the checks. The foregoing checks total $6,893. *45 We agree with respondent's disallowance of that amount for want of substantiation. We think there is no acceptable evidence that any part of it represented ordinary and necessary business expenses. The remaining cashed checks total $12,711. They range from $300 to $13. They are segregated into groups in our Findings. We think the testimony, although generalized, supports the view that a substantial part of the total of $12,711 was spent for incentive purposes and constitute allowable ordinary and necessary expenses. We do not for a moment, however, agree that all of said $12,711 was so spent. Since we do find that a substantial amount is allowable, (but not substantiated with precision) we approach the problem in the light of the principles established in Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). It is to be noted that most of the checks in the $300 and under group, in number as well as in amount, are also in round figures. By no stretch of the imagination can we accept the view that this was mere coincidence, or that the figures represent the precise amounts paid for incentive objectives. We have no doubt that a substantial amount went into personal expenditures. *46 When petitioner treated his men to drinks, and breakfasts, dinners, and suppers, his own thirst and appetite measured well up to that of his employees. As to petitioner, however, these were nondeductible personal expenses. There is other evidence, as well, from which it may be inferred that cash expenditures for nondeductible items were substantial. We have, of course, examined the evidence and exhibits presented on petitioner's behalf in an effort to show what his living expenses were, and that there were sufficient sources other than cashed checks from which they may have been paid. We are not greatly impressed with this evidence. While we have already disallowed the deduction of the $2,000 and $1,000 cashed checks, and do not duplicate these items here, we may nevertheless point to them again because petitioner's listing of personal expenses contains neither, and there remain nothing but cash expenditures to explain the cost of the trip to San Juan and Miami, and the medical expense of $1,000. There is also evidence that in addition to the Cadillac which petitioner himself used, he bought four or five autos in 1957. He states that these were bought for the use of his employees, *47 but, assuming that this is true, the total cost would not be deductible in 1957. There is no issue in the case as to depreciation. And there is no evidence as to the amounts paid for the cars, or any source of payment other than cash. There is, likewise, no evidence of the source of payment of country club dues in the amount of $40 per month. All of the foregoing are items which, one way or another, emerge from the record. They strongly indicate that the sources of payment were cash - cash which could only have been part of the proceeds of the cashed checks. The burden is upon petitioner to explain away these factors if they can be explained away. We do not think it would be helpful to go into a further analysis of the individual items of cashed checks, although they lend further color to the view we take. We cannot, of course, and do not suggest that we can solve the riddle by precise mathematical computations. We have given a great deal of thought to the problem of reaching a fair result, having further in mind the view ( Cohan v. Commissioner, supra) that any proper doubts are to be resolved against petitioner. We have already affirmed respondent in his disallowance *48 to the extent of $6,893, representing the larger checks. As to the remaining total of $12,711, we think the record supports the allowance to petitioner of ordinary and necessary business expenses as a deduction in the total amount of $6,356. In view of the failure of petitioner to substantiate proper deductions related to cashed checks in excess of $6,356, we approve disallowance of the remaining total of $6,355 subject to appropriate adjustment to reflect the fact that our starting point for analysis was $19,604 (the total of cashed checks) although petitioner, in fact, deducted only $14,703 and attributed the difference of $4,901 to "personal use." The claim for refund is disallowed. Decision will be entered under Rule 50. Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *↩
2. § 1.162-17. Reporting and substantiation of traveling and other business expenses of employees. * * *
(c) Expenses for which the employee is not required to account to employer. If the employee is not required to account to his employer for his ordinary and necessary business expenses, e.g., travel, transportation, entertainment, and similar items, or, though required, fails to account for such expenses, he must submit, as a part of his tax return, a statement showing the following information: * * *
(d) Substantiation of items of expense. * * *
(3) Where records are incomplete or documentary proof is unavailable, it may be possible to establish the amount of the expenditures by approximations based upon reliable secondary sources of information and collateral evidence. * * * Since detailed records of incidental items are not required, deductions for these items may be based upon a reasonable approximation. In cases where a taxpayer is called upon to substantiate expense account information, the burden is on the taxpayer to establish that the amounts claimed as a deduction are reasonably accurate * * *. In connection with the determination of factual matters of this type, due consideration will be given to the reasonableness of the stated expenditures for the claimed purposes in relation to the taxpayer's circumstances (such as his income and the nature of his occupation), to the reliability and accuracy of records in connection with other items more readily lending themselves to detailed recordkeeping, and to all of the facts and circumstances in the particular case. * * *
Cf. Rev. Rul. 54-195, C.B. 1954-1, 47↩.