Natalie Sas-Jaworsky v. Commissioner. Alexander Sas-Jaworsky v. Commissioner.
Sas-Jaworsky v. Commissioner
Docket Nos. 95155 & 95156.
United States Tax Court
T.C. Memo 1965-120; 1965 Tax Ct. Memo LEXIS 210; 24 T.C.M. (CCH) 630; T.C.M. (RIA) 65120; May 4, 1965
*210 Petitioner Alexander Sas-Jaworsky and others formed a corporation for the purpose of publishing and promoting a book. Held: Petitioners may not deduct a loss incurred with respect to the book. Held further: Petitioners may not have a deduction for a casualty loss in connection with the destruction of some of the books by fire. Held further: Petitioners are not entitled to a nonbusiness bad debt deduction for the payment of the debt of another. Alexander Sas-Jaworsky, pro se, So. State St., Abbeville, Vermilion Parish, La. George T. Rita, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined a deficiency for the year 1959 in the income tax of petitioner Natalie Sas-Jaworsky in the amount of $1,931.81 and a deficiency for the year 1959 in the *211 income tax of petitioner Alexander Sas-Jaworsky in the amount of $2,075.81. The first two issues in these consolidated cases are (1) whether petitioners are entitled to a deduction for the loss on the promotion and publication of a certain book, and (2) whether petitioners are entitled to a casualty loss on the destruction of some of these books by fire. The resolution of these issues depends upon whether a corporation created for the purpose of promoting the book is to be treated as a separate taxable entity. The third issue is whether petitioners are entitled to a bad debt deduction for the payment of the debt of another. Findings of Fact Some of the facts have been stipulated and the stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners are husband and wife who reside in Abbeville, Louisiana. They filed separate income tax returns for the year 1959 with the district director of internal revenue at New Orleans on which they reported their respective shares of their community income under the laws of Louisiana. On April 6, 1959, Dr. Alexander Sas-Jaworsky (hereinafter referred to as Alexander) entered into an agreement with *212 Joe Choate (hereinafter referred to as Choate) and Roy Theriot (hereinafter referred to as Theriot) with regard to a manuscript relating to the life of Alexander. The agreement provided as follows: This agreement made and entered into, this 6th day of April, 1959, by and between the following parties: 1. DR. ALEXANDER SAS-JAWORSKY, married to and living with Natalia Sas-Jaworsky, a resident of Vermilion Parish, Louisiana; 2. JOE CHOATE, single and of lawful age of majority, a resident of Vermilion Parish, Louisiana; 3. ROY THERIOT, married to and living with Helen Roberts, a resident of Vermilion Parish, Louisiana. WHEREAS, each of the above-mentioned parties has given of his time, talents, and efforts, and otherwise materially contributed in preparing and writing a manuscript relating to the life of Dr. Alexander Sas-Jaworsky, said manuscript being temporarily entitled These They Gifts, The Story of Alexander Sas-Jaworsky; WHEREAS, it is the intention and desire of the above-mentioned parties to publish said manuscript and to secure a copyright thereof. NOW THEREFORE, in consideration of the premises above mentioned, it is hereby understood, covenanted, and agreed, *213 by and among the said parties to this agreement, that they are each vested as owners in the property rights of said manuscript, and each shall share in the following proportions: Dr. Alexander Sas-Jaworsky
50 per cent
Joe Choate
40 per cent
Roy Theriot
10 per cent in any and all profits, after expenses, resulting from the copyrighting and publishing of same, as well as any other future profits that may be realized by the sale of or by the revenue arising from any other business transactions connected with or related to the above property rights, without exception or reservation. This agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of each of the parties hereto. IN WITNESS WHEREOF, the said parties, to these presents, have hereunto, in triplicate original, set their hands, the day and date first above written. WITNESSES: /s/ Ambrose Broussard /s/ Lois Hebert /s/ Dr. A. Sas-Jaworsky / DR. ALEXANDER SAS-JAWORSKY /s/ Joe Choate / JOE CHOATE /s/ Roy Theriot / ROY THERIOT /s/ Carrol L. Spell / NOTARY PUBLIC * * *
At the same time and on the same date as this agreement, Alexander, Choate and Theriot *214 organized a corporation known as American Promotions, Incorporated (hereinafter referred to as American) under the laws of Louisiana. The Articles of Incorporation of American, which were filed with the Secretary of State of the State of Louisiana on April 8, 1959, provided that the corporation was organized: To promote the sale of the biography of Dr. Alexander Sas-Jaworsky, or any other book or books which this corporation may undertake to promote, together with movie, television and radio rights incidental to the proper promotion of said book or books to be promoted by this corporation, and to do and perform all things necessary and proper to carry out the purposes and objects of this corporation. Alexander, Choate, and Theriot signed the Articles of Incorporation as incorporators and were designated the corporation's directors. Alexander and Theriot were named its registered agents. The total number of authorized shares of stock of the corporation was 100 shares of a par value of $10 each. Alexander received 50 percent, Choate 40 percent, and Theriot 10 percent of the shares of stock issued. The amount of paid-in capital with which the corporation was to begin business was *215 stated to be $1,000. Choate is the author of the book on Alexander's life now entitled "The Best Answer is America" and the book is copy-righted in his name. On June 10, 1959, American entered into a contract with Vantage Press, Inc., for the publication of 5,000 copies of this book, for a total consideration of $7,500, payable $3,000 with the signing of the agreement, $1,500 upon receipt of the galley proofs, and $3,000 upon completion of the book. The contract was signed for American by Alexander as president. On July 3, 1959, American opened a bank account at the Bank of Abbeville & Trust Company. The signatories on the account were Alexander and Theriot. Sometime in 1959 Theriot sold his interests with respect to Alexander's biography to Robert Motty. On July 25, 1959, the signatories on the account were changed to Alexander and Motty. A total of 36 deposits aggregating $7,358.28 were made to this account in 1959. All of the gross receipts from the sale of Alexander's biography in 1959 totalling $670 were deposited in this account. On July 28, 1959, the amount of $750 was deposited to this account. On July 29, 1959, Choate executed a note with the Bank of Abbeville & Trust *216 Company in the amount of $3,400. Motty endorsed this note. On July 30, 1959, the amount of $3,400 was deposited in American's account. All the expenditures made by American were made by check drawn on this account and signed by Alexander and Motty. Payments to Vantage Press by American for books were made by check of July 28, 1959, in the sum of $1,500 and by check of August 13, 1959, in the sum of $2,500. A total of 45 checks were drawn on this account in 1959. The board of directors of American never held a formal meeting and no minutes of corporate action were kept. In April 1959, Alexander borrowed $80,000 from the Bank of Abbeville & Trust Company. He told Emile Saulier, vice president of the bank, that he needed about $5,000 of this amount to promote his biography. Alexander made some payments to Vantage Press for books by his personal check. He paid $50 by his personal check for the rent of a truck for distributing books. Alexander made speeches and wrote letters in connection with the promotion of the book. Other letters in connection with the promotion of the book were signed by Harry G. Womack, as "Director of Public Relations" or Juliette M. Flory, as "Secretary. *217 " When Choate's note became due, both Motty and he were unable to pay. Motty asked Alexander to pay the note. Alexander gave his word to Choate and Motty that he would pay the note, but he never endorsed the note or executed a written guaranty. The note was paid on January 27, 1960, out of American's account. During the year 1959 Alexander stored some of the books in a building belonging to him. On December 28, 1959, a fire destroyed the building and all its contents. Under a policy of fire insurance, Alexander received from the insurance company the sum of $3,700 for books and printed material. On their Federal income tax returns for 1959 petitioners each claimed deductions, including a deduction of $2,672.10 for one-half of a business loss incurred in the publication and promotion of Alexander's biography, and a deduction of $950 for one-half of a nonbusiness bad debt arising from the satisfaction of Choate's debt. In his statutory notices of deficiency dated August 29, 1961, respondent determined that the community did not sustain a deductible loss from the sale of books and was not entitled to a nonbusiness bad debt deduction in the amount claimed for the payment of Choate's *218 debt. In 1959, American was an existing taxable entity. The business loss resulting from the publication and promotion of Alexander's biography was incurred by American. The loss resulting from the destruction of books by fire was also incurred by American. Petitioners are not entitled to a nonbusiness bad debt deduction for the payment of Choate's debt. Opinion The first issue is whether petitioners are entitled to deduct the loss on the publication and promotion of Alexander's biography. Petitioners claim that Alexander, Choate and Theriot intended to form a partnership to publish and promote Alexander's biography, that their lawyer mistakenly drew up articles of incorporation, and that therefore in 1959 American was not a corporation for tax purposes. There is no evidence beyond Alexander's bare testimony that Choate, Theriot, and he did not intend to form a corporation or that their lawyer erroneously drew up articles of incorporation when the parties intended a partnership agreement. The parties signed the articles of incorporation as incorporators and they undoubtedly were aware of what they signed. Stock in the corporation was issued to them. We are not convinced *219 that the parties did not intend to form American. Having formed American for the purpose of publishing and promoting Alexander's biography, petitioners cannot now claim that the financing of the biography was their personal expense. It was American which contracted with Vantage Press for the publication of the book. Two payments for the books totalling $4,000 were paid from American's account. The income from the sale of the books was deposited to its account and expenditures in connection with the promotion of the book were made from its account. Since it actually conducted the business for which it was organized, American was not a sham and may not be disregarded for tax purposes. Moline Properties v. Commissioner, 319 U.S. 436; Strasburger v. Commissioner, 327 F. 2d 236 (C.A. 6), affirming a Memorandum Opinion of this Court; Nelson v. Commissioner, 281 F. 2d 1 (C.A. 5), affirming a Memorandum Opinion of this Court; Garden State Developers, Inc., 30 T.C. 135; Langdon L. Skarda, 27 T.C. 137. Any money spent by petitioners to promote the book must be considered a contribution of capital to the corporation. Any loss *220 incurred in the publication and promotion of the book was the loss of the corporation and petitioners are not entitled to offset their individual income by deducting it. In their petition, petitioners each claimed an overpayment in income tax for 1959 in the amount of $750 arising from a deduction of $1,150 to which they claimed they were entitled as one-half of a casualty loss from the destruction of some of the books by fire. Although the books which were destroyed were stored in a building owned by Alexander, the books were the property of American. Their destruction was therefore a loss incurred by American and petitioners are not entitled to a deduction for their loss. See Interstate Transit Lines v. Commissioner, 319 U.S. 590; H. William Ihrig, 26 T.C. 73. The third issue is whether petitioners are entitled to a nonbusiness bad debt deduction for the payment of Choate's debt. We have found that American was an existing corporation. The note owing by Choate to the bank was paid with funds from American's account. It was not paid by petitioners, and they are not entitled to a deduction for its satisfaction. Moreover, Alexander was under no legal *221 obligation to pay the debt. He was not an endorser on the note and did not execute a written guaranty. Any payment of Choate's debt was therefore voluntarily made and no debtor-creditor relationship between Choate and Alexander was created. See Ralph E. Wilson, 40 T.C. 543; William G. Park, Executor, 22 B.T.A. 1263; Income Tax Regs., section 1.166-1(c). In any event petitioners are not entitled to such a deduction in 1959 since the note was not paid until January 27, 1960. Decisions will be entered for the respondent.