WILLIAM E. WILTSHIRE, III, and BARBARA G. WILTSHIRE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wiltshire v. Commissioner
Docket No. 4166-78.
United States Tax Court
T.C. Memo 1980-210; 1980 Tax Ct. Memo LEXIS 371; 40 T.C.M. (CCH) 493; T.C.M. (RIA) 80210; June 23, 1980, Filed James F. Pascal, for the petitioners. Ronald P. Campbell, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency in petitioners' Federal income tax for the calendar year 1972 in the amount of $20,392.62. Concessions having been made, the only issue remaining is whether petitioners are entitled to a section 170 [1] charitable contributions deduction, in excess of $4,000, for the donation of an antique Kuba rug to the Wilton Museum. *372 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are husband and wife who resided in Richmond, Virginia, at the time the petition herein was filed. They filed their joint Federal income tax return for the year 1972 with the Internal Revenue Service Center, Memphis, Tennessee. Barbara G. Wiltshire is a party herein only because of the joint return, and, consequently, William E. Wiltshire, III, will hereinafter be referred to as petitioner. During the taxable year 1972, petitioner's principal occupation was that of an investor. He donated a variety of items to charity during that year, including an antique Kuba rug, the value of which is the sole issue before us. Petitioner had purchased this rug from a rug merchant who had acquired it in February 1970, as part of a trade in which he had allowed $3,500 as its trade-in value. From May 1970, to December 1971, the rug merchant, O. Perry Edgeworth (Edgeworth), had offered this antique rug for sale, seeking a price of $10,000. In addition to Edgeworth's efforts, another rug merchant, Jerome M. Kambourian (Kambourian) actively sought prospective buyers for this rug on a commission basis, *373 but to no avail. He was asking a price of $12,000. Both Edgeworth and Kambourian have dealt with petitioner, a well-known collector of antique rugs, for several years. In December 1971, petitioner purchased the antique Kuba rug from Edgeworth for $3,500. The rug measured 5 feet 6 inches by 11 feet 3 inches and had a "Guradez" knot count of 56 (7 across and 8 high). The term "Kuba" as applied to antique rugs denotes a geographic region of the world where such rugs are handmade; in this case, an area in the Caucasian Mountains between the Caspian Sea and the Black Sea and just north of the Iranian border. The Caucasus produce two grades of rugs, the better quality originating from the area of the major Caucus. Kuba is in the major Caucus. Early Kuba rugs (pre-1750) are readily distinguishable because of their curvilinear patterns and Guradez (flat) knots. The subject rug is or such vintage. The rug's design is known as Vashan. It has a dark blue background with an over-all design of rosettes and forked tendrils covering the entire field of the rug. In addition, petitioner's Kuba rug was in very good to excellent condition. It has no stiff or rotten apertures, despite its *374 being over 200 years old. A late 18th Century Kuba rug, measuring 12 feet 9 inches by 5 feet 1 inch, sold at a New York auction on June 29, 1972, for $3,200. Other such rugs, during October 1972, sold at price ranges from $400 to $3,100. Petitioner donated the 18th Century Kuba rug in question to the Wilton Museum in Richmond, Virginia, in December 1972, and on his calendar year joint return deducted $13,540 as its fair market value. This value was based upon an independent appraisal. Respondent determined in his statutory notice of deficiency that $4,000 was the fair market value of the Kuba rug, and thus reduced petitioner's charitable contributions deduction by $9,540. OPINION Respondent argues that the fair market value of petitioner's Kuba rug was $4,000 at the time of its contribution. Petitioner contends that such value was properly appraised at $13,540, and that he is entitled to deduct that amount. The value of a contribution of property to a section 170(c) organization is measured by its fair market value as of the date of the gift, as provided by section 1.170A-1(c)(1), (2), Income Tax Regs. Such section provides, in pertinent part: (c) Value of a contribution *375 in property. (1) If a charitable contribution is made in property other than money, the amount of the contribution is the fair market value of the property at the time of the contribution * * * (2) The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. * * * See also Jarre v. Commissioner, 64 T.C. 183, 188 (1975). In the instant case, the parties are in agreement that a charitable contributions deduction is allowable. Their only disagreement is the amount. It is a basic tenet of tax law that deductions are a matter of legislative grace and that the burden of clearly showing the right to a claimed deduction is on the taxpayer. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, rehearing denied 320 U.S. 809 (1943); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Rule 142(a), Tax Court Rules of Practice and Procedure.
The question of valuation is a subjective one and requires the Court to exercise its judgment *376 in light of all the facts of the case. Kaplan v. Commissioner, 43 T.C. 663, 665 (1965); Estate of Sallie Houston Henry v. Commissioner, 4 T.C. 423, 447 (1944), affd. 161 F.2d 574 (3d Cir. 1947). At the trial of the instant case, petitioner presented two expert witnesses. In weighing their testimony we have considered as important their demonstrated qualifications to form an opinion, their relationship and prior dealings with petitioner, their selections of comparable sales, their familiarity and contact with the potential market for the contributed property, and, of course, their familiarity with the contributed material. One expert, Edgeworth, testified that, in his opinion, the fair market value of the subject rug in December 1972, was $14,440. The other expert, Kambourian, stated the value to be $12,640. Respondent argues that both of these witnesses were biased in their opinions of the rug's value; pointing to their prior dealings with petitioner, the fact that customers for such rugs are few, and the desire, on the part of the witnesses, to please and cater to the desires of such a valued customer as petitioner. The testimony of *377 these two experts is petitioner's major case. Unfortunately, such testimony is deficient in several regards. A crucial problem exists with the yardstick used by each of the witnesses in arriving at fair market value. In addition to not comporting with the standard pronounced in the regulations, the measure of fair market value varies as between the experts. Thus, Edgeworth testified that he considered fair market value to be the retail value of the rug measured by what it would bring over a period of 12 to 18 months. Kambourian, on the other hand, determined fair market value to be that value at which one should be able to sell or buy an item. When one considers that each expert had made abortive attempts to sell the rug, and that it was eventually sold to petitioner at a 65-percent discount from the asking price of $10,000, the measures of fair market value used by the experts were inconsistent with the facts. Nor are we persuaded by Edgeworth's testimony that such a significant discount is analogous to a "forced sale." The witness testified that he had a cash flow problem [2] and knew that petitioner would purchase the rug for cash. Many businesses, on occasion, experience *378 cash flow problems that can be resolved in a variety of ways (e.g., short term bank financing, increased collections, etc.). The witness's characterization of the discounted sale as a "forced sale" is clearly improper. This was not a bulk sale, bankruptcy sale, or sheriff's sale. See McGuire v. Commissioner, 44 T.C. 801 (1965); Cassidy Co. v. Commissioner, 11 B.T.A. 190 (1928); Park Amusement Co. v.Commissioner, 15 B.T.A. 106 (1929). To the contrary, this was a legitimate sale made between a valued customer (petitioner) and the witness, which occurred when the seller's business was a thriving, going concern. As such, the fact that Edgeworth chose to sell at almost a two-thirds reduction from his original asking price for an item that had not sold for 19 months is merely a matter of business judgment. In addition to our analysis of the expert testimony there are other factors which influence our judgment of the property's valuation. It seems wholly unlikely that a rare 18th Century Kuba rug, with a valuation in excess *379 of $10,000, would remain uninsured by petitioner, whose principal occupation during the taxable year in issue was that of investor. Yet, the record is silent on this point. The lack of any evidence as to such insurance, which would have had a stated value, is damaging to petitioner's case. We feel that the best evidence in this record of the fair market value of the rug in issue at the time of the donation is what petitioner had paid for it just 12 months before. This is entirely objective. Further objective evidence is that Edgeworth, the rug merchant, had acquired the rug in an arm's-length transaction less than a year before it was sold to petitioner by allowing an identical amount ($3,500) on a trade, and we note that the record is silent as to any escalation of values of rugs of this character during the pertinent period. Having considered the entire record, we have concluded that respondent's allowance of a charitable deduction of $4,000 is reasonable and that petitioner has failed his burden of upsetting it. Because of concessions, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue.↩
2. When pressed, however, the witness described his business as being in a "slight tight situation."↩