**LANDFIELD FINANCE COMPANY,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 17485.

United States Court of Appeals
Seventh Circuit.

Oct. 21, 1969.

Joseph I. Adler, of Fishleder & Adler, Chicago, Ill., for appellant.

Johnnie M. Walters, Asst. Atty. Gen., Carolyn R. Just, Attorney, Tax Division, U. S. Department of Justice, Washington, D. C., Thomas A. Foran, U. S. Atty., Chicago, Ill., Lee A. Jackson, Elmer J. Kelsey, Attorneys, Department of Justice, Washington, D. C., Richard A. Makarski, Lawrence J. Cohen, Asst. U. S. Attys., of counsel, for appellee.

Before HASTINGS, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Plaintiff-taxpayer Landfield Finance Company brought this action in the district court seeking an income tax refund in the amount of $6,626.48 which it alleges was illegally and erroneously assessed and collected. The district court entered judgment adverse to taxpayer and this appeal followed. We affirm.

The sole issue on appeal is whether the proceeds of a life insurance policy were "received [by plaintiff-taxpayer-creditor] * * * under a life insurance contract * * * by reason of the death of the insured [debtor]" within the meaning of Section 101(a) (1) of the Internal Revenue Code of 1954,[1] under the facts of this case.

The trial court accepted a written stipulation of all relevant facts entered into by the parties.

Taxpayer is in the business of making loans. On September 15, 1958, it made a loan to the Matson Music and Printing Company, Inc. in the total amount of $44,167.37. From this principal sum, taxpayer immediately deducted and received an interest charge of $16,710.00. Carl Matson was the sole stockholder of Matson Music and gave his personal guarantee as part of the security for the loan to Matson Music. In addition, he was required to insure his own life and to pay the policy premiums as a condition of securing the loan from the taxpayer. The face amount of the policy was $21,800.

The creditor was designated as an irrevocable beneficiary in and co-owner of the policy. It was entitled to receive payment of the proceeds of the policy from the insurance carrier upon proof

---

1. Section 101(a) (1) provides in relevant part:

"SEC. 101.  Certain death benefits.

(a) *Proceeds of Life Insurance Contracts Payable by Reason of Death.—*

(1) *General rule.*—Except as otherwise provided in paragraph (2) and in subsection (d), gross income does not include amounts received (whether in a single sum or otherwise) under a life insurance contract, if such amounts are paid by reason of the death of the insured. * * * "

of the debtor's death. However, the creditor was obligated to pay any amount in excess of the unsatisfied indebtedness to secondary beneficiaries designated in the policy by the insured. The relevant sections of the policy are set out in the margin.[2]

After the loan was made and the insurance policy issued, there was a default in the loan payments followed by a foreclosure and sale of certain tangible security; an unsatisfied loan balance remained.

Carl Matson died April 11, 1960, and the total proceeds of the insurance policy securing the loan were paid to taxpayer in the sum of $22,567.57. The entire amount was due on the loan balance and was retained by taxpayer. Of this amount, taxpayer reported as income on its corporate return for the fiscal year ended June 30, 1961, a total gain of $16,106.42. This figure essentially represented the difference between taxpayer's actual cash outlays in connection with the Matson Music loan account and the total credits to that account—*i.e.*, it represented the financing charges taxpayer earned on the account. The tax paid on this gain was $6,626.48.

2. The application for the policy disclosed the following information as to the beneficiary:

" * 21 To whom payable
*Landfield Finance Company*
" * 22 Relationship *Creditor*
" * 23 Is the right to change the Beneficiary reserved to the proposed insured? *No*
If not, to whom are ownership and control reserved?
* QUESTIONS 21, 22 & 23 BENEFICIARY AND OWNERSHIP PROVISIONS In Accordance with SPECIAL AGREEMENT"

When the policy was issued, it provided, *inter alia*:

"OWNERSHIP AND BENEFICIARY PROVISIONS

The Insured, jointly with all Beneficiaries appointed *without right of revocation*, is the Owner of this Policy, unless otherwise provided. Such ownership shall be subject to any assignment on file at the Home Office. The Owner has the right, from time to time, prior to maturity of the Policy by death or as an endowment, to change the Beneficiary and the provisions governing control of the Policy, assign the Policy as collateral security, or exercise any right, option or benefit contained in the Policy or permitted by the Company; and the rights of any Beneficiary shall be subject to any interest so created. * * *"

Attached to the policy was the following "Beneficiary Agreement":

"A. The proceeds will be paid in one sum to the Insured's creditor, Landfield Finance Co., its successors and assigns hereinafter referred to as said creditor, as the interest of said creditor may appear, without right of revocation by the Insured; any amount received by said creditor in excess of the indebtedness to be paid by said creditor to the residuary beneficiary, the executors or administrators of the Insured.

"B. The right is hereby reserved to said creditor to receive any and all shares of surplus, to assign the policy as collateral security, surrender the same to the Company for its cash value, and to exercise for said creditor's own benefit any right, option or benefit contained in the policy or permitted by the Insurance Company without the consent of the Insured or the residuary beneficiary; any amount received by said creditor in excess of the indebtedness when exercising any of the above rights to be paid by said creditor to the Insured, and to the executors or administrators of the Insured. Subject to such prior right reserved to said creditor, the Insured shall have the right to change or revoke the appointment of the residuary beneficiary, and to substitute therefore such other residuary beneficiary as he may wish, such appointment to be made only by written request of the Insured and to take effect only when endorsed on the policy by the Company.

"C. There shall be no responsibility on the part of the New England Mutual Life Insurance Company to see to the payment of any amount by said creditor to the Insured, or the executors or administrators of the Insured, or to any residuary beneficiary. The New England Mutual Life Insurance Company shall be fully protected in making payment of the entire proceeds to said creditor or in permitting said creditor, without the consent of the Insured or the residuary beneficiary, to exercise any right above provided, and to receive any amount resulting from the exercising of such right."

On June 28, 1963, taxpayer filed a claim for refund asserting that the insurance policy proceeds had been "received * * * by reason of the death of the insured" and consequently were exempt under Section 101(a) (1), *supra.*

In dismissing the taxpayer's complaint, the district court held the insurance policy proceeds were not paid to taxpayer "by reason of the death of the insured" within the meaning of Section 101(a) (1) but rather were paid to taxpayer by reason of the insured's indebtedness to it.

Taxpayer asserts that the words of the statute are unambiguous and that its refund claim is clearly within those words. The critical words are "received * * * by reason of the death of the insured."

Taxpayer argues that under the policy provisions set out above it alone was entitled to receive the proceeds of the policy from the insurer solely upon proof of the death of Carl Matson. It urges that this is all the clear words of the statute require to make the exemption applicable.

Taxpayer further maintains that any duty it might have had to pay over any part of the proceeds to other parties is completely irrelevant because the statute makes the exemption available to the party who *receives* the proceeds from the insurer.

Taxpayer cites only Durr Drug Co. v. United States, 5 Cir., 99 F.2d 757, 119 A.L.R. 1192 (1938), in support of its position. While it contains some language lending support to taxpayer's argument, it is clear from the opinion that the court there was not concerned with the construction of the predecessor statute to § 101(a) (1), *supra,* but rather with the predecessor to § 101(a) (2).

In *Durr Drug* the court noted at 99 F.2d 759: "Appellee [government] does not question the propriety of applying the exclusion provided for in section 22(b) (1) of the act [now § 101(a) (1)] to the proceeds of the insurance as an amount 'received under a life insurance contract paid by reason of the death of

the insured.' It contends that, being within the exclusion, its issuance to and ownership by appellant [taxpayer] was, either in fact or in legal effect, a 'case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance * * * contract.'" [Quoting from § 22(b) (2), now § 101(a) (2)].

The court then went on to discuss whether the creditor was the owner of the policy or whether it had been assigned to him by the debtor, therefore making the proceeds taxable to the creditor under § 22(b) (2), now § 101(a) (2). Thus, we do not believe that *Durr Drug* decides the issue now before us. To the extent that its language may be considered inconsistent with our disposition of the instant case, we respectfully decline to follow it.

Like taxpayer, the government relies mainly on one authority. It argues that T. O. McCamant v. Commissioner of Internal Revenue, 32 T.C. 824 (1959), is directly in point and holds the exemption in § 101(a) (1) is available only when the taxpayer has a right to receive *and to retain* the proceeds of a life insurance policy *solely* by reason of the death of the insured.

Taxpayer, however, asserts that *McCamant* is distinguishable from the case at bar. In *McCamant* the creditor had previously written the debt off as a bad debt and received a corresponding tax benefit. In addition the creditor had no right to receive the proceeds from the insurer in the first instance unless he could prove *to the insurer* that the debt remained unsatisfied. Neither of these elements is present here. We conclude that *McCamant*—like *Durr Drug*—while perhaps relevant to the issue here, is not dispositive of the precise question before us.

Section 61 of the Internal Revenue Code of 1954 defines gross income broadly as "all income from whatever source derived * * *." It is fundamental and well-settled that exclusionary provisions, being matters of legislative grace, are to be construed strictly

against the taxpayer. The burden of proving the right to an exclusion rests with the taxpayer. Interstate Transit Lines v. Commissioner of Internal Revenue, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943), Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933), Universal Oil Products Co. v. Campbell, 7 Cir., 181 F.2d 451, 457 (1950), Commissioner of Internal Revenue v. Drovers Journal Publishing Co., 7 Cir., 135 F.2d 276, 278 (1943).

■ Taxpayer takes an unrealistically narrow view of the meaning of the word "received" as used in Section 101(a) (1). We do not believe Congress intended to use the word to mean merely the physical act of being handed the policy proceeds by the insurance company. Rather we agree with the government that Congress had in mind the *ultimate* right to receive the proceeds—*i.e.,* the right to receive *and to retain* the proceeds of a life insurance contract.

■ Taxpayer here did receive and retain proceeds of a life insurance contract. However, before it can claim the exemption, it must bring itself within the further limitation imposed on this exemption by Congress in its use of the phrase "by reason of the death of the insured."

It is clear that taxpayer here had the right to receive the proceeds of the insurance solely by reason of the insured's death. However, it is equally clear that its right to retain such proceeds depended exclusively on the existence of the unsatisfied debt. The beneficiary agreement, which is the sole basis of taxpayer's status as beneficiary and co-owner of the policy, clearly limits taxpayer's right to retain the proceeds of the policy by his status as creditor. In each paragraph of the agreement giving the taxpayer rights in the policy or proceeds, it is expressly stated that "any amount received by said creditor in excess of the indebtedness [is] to be paid by said creditor to the residuary beneficiary * * * [or the insured]."

The question then is whether the words "by reason of the death of the insured" were intended by Congress to exclude such a case from the § 101(a) (1) exemption. Taxpayer would answer in the negative. Its position is that by these words Congress intended merely to exclude cases where the insurance company pays under a policy after it has been cashed in before the death of the insured, or pays interest on funds left with it, or pays dividends. We disagree. The result of such a construction is unreasonable.

Taxpayer concedes that if Matson had lived and had paid his obligation the resulting gain would have been includable in taxpayer's gross income. Nevertheless, it argues that Congress intended to exclude the same gain when realized from Matson's life insurance. We do not believe that Congress intended that the same income should be included in, or excluded from, gross income depending on the wholly fortuitous circumstance of whether the debtor died before or after having fully satisfied his obligation. Taxpayer has not satisfied us that Congress intended such an unreasonable result.

■ Without attempting to assess the full scope of the limitation imposed by the words "by reason of the death of the insured," we are convinced that Congress intended by those words to deny the benefit of the § 101(a) (1) exemption to life insurance proceeds received and retained in lieu of other income due the beneficiary which, but for the death of the insured, would clearly have been includable in the gross income of the beneficiary.

We conclude, therefore, that under the facts of this case, taxpayer's receipt of the proceeds of the life insurance contract in question did not come within the exemption granted by § 101(a) (1), and that the district court did not err in so holding. The judgment appealed from is affirmed.

Affirmed.