L. C. THOMSEN & SONS, INC.,
Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,
Defendant-Appellee.

No. 72-1949.

United States Court of Appeals,
Seventh Circuit.

Argued June 18, 1973.

Decided Sept. 7, 1973.

Myron L. Joseph, Milwaukee, Wis., for plaintiff-appellant.

Fred B. Ugast, Acting Asst. Atty. Gen., Carleton D. Powell, Atty., Tax Div., Dept. of Justice, Washington, D. C., David J. Cannon, U. S. Atty., Milwaukee, Wis., for defendant-appellee.

Before KILEY, FAIRCHILD and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

In 1959 taxpayer, a manufacturer of bottling equipment, purchased insurance on the life of its exclusive distributor in California. He was killed in a fire in 1967, and insurance proceeds, including a regular death benefit, an accidental death benefit, and interest, totaling $50,444.92, were thereafter paid to taxpayer. At the time of his death, distributor owed the taxpayer $48,053.97. Taxpayer's receipt of the insurance proceeds, all of which it retained, did not liquidate the debt. The question on this appeal is whether it was error for the district court to instruct the jury to "use your own good common sense" in deciding whether the insurance proceeds were "paid by reason of the death of the insured" within the meaning of § 101(a)(1) of the Internal Revenue Code, 26 U.S.C. § 101(a)(1). The jury found that the proceeds were taxable. On the basis of the undisputed facts, we hold that they were not.

With exceptions not relevant to this case, the statute provides that "gross income does not include amounts received (whether in a single sum or otherwise) under a life insurance contract, if such amounts are paid by reason of the death of the insured." *Ibid.*

In Landfield Finance Co. v. United States, 418 F.2d 172 (7th Cir. 1969), we

held that the word "received" as used in this section refers to the ultimate right to receive the proceeds—in other words, the right to receive and unconditionally to retain them:

"Taxpayer takes an unrealistically narrow view of the meaning of the word 'received' as used in Section 101(a)(1). We do not believe Congress intended to use the word to mean merely the physical act of being handed the policy proceeds by the insurance company. Rather we agree with the government that Congress had in mind the *ultimate* right to receive the proceeds—*i. e.*, the right to receive *and to retain* the proceeds of a life insurance contract." *Id.* at 176.

In this case there is no claim that any condition or limitation restricted the taxpayer's entitlement to the entire proceeds of this policy. The government emphasizes the fact that the proceeds were approximately equal to the decedent's indebtedness when the policy was purchased and also at the time of his death. It is clear, however, that the amount of the proceeds which taxpayer received—and ultimately retained—was unaffected by the size of the decedent's indebtedness. If the account had been current, taxpayer would still have been entitled to the full $50,444.92; it did not and is not obligated to remit the difference between that amount and the $48,053.97 balance in the distributor's account either to his estate or to secondary beneficiaries.[1] The rationale of *Landfield* supports taxpayer's position here.

The government argues, however, that the taxpayer's motivation in purchasing the insurance in 1959 is relevant and that the jury verdict has resolved the factual issues in its favor. On the question of motive, the government contended at trial that the insurance was intended to guarantee the collectibility of an account receivable; taxpayer contended that it desired indemnity against the injury to a going business which the death of an extremely important distributor of its products—a "key man" so to speak—would probably cause. We must assume that the jury resolved the factual dispute in favor of the government. Nevertheless, we hold that such evidence of motivation for the purchase of an insurance policy does not affect the application of the statute to the facts before us. This policy did not merely insure the indebtedness; its proceeds were entirely and unconditionally payable to the taxpayer.

Finally, the government argues that the statute should not be construed to allow the taxpayer the equivalent of a double benefit—a bad debt deduction for the unsatisfied indebtedness of $48,053.-92 and also exclusion of the insurance proceeds from its gross income. But the propriety of the bad debt deduction is not before us. The jury found that the entire debt was uncollectible and, accordingly, that the deduction was properly taken. The government has not appealed from that determination. Perhaps the jury felt that a rough balancing of the equities made it appropriate to find that the insurance proceeds were taxable. Perhaps, also, if Congress were squarely faced with the policy question whether on facts like these some adjustment—possibly a *pro tanto* inclusion of a portion of the proceeds in gross income—would be appropriate, it might authorize that result. But on this appeal we may only decide the issue before us on the basis of the statute as now written. On that basis, we hold that appellant was entitled to judgment as a matter of law.

Reversed.

---

1. The fact that the insurance proceeds approximately equaled the indebtedness is attributable, in part, to the fact that an accidental death benefit was payable. If his death had not been accidental, only $25,000 would have been received and, again, the full indebtedness would have remained.