ELOTT H. RAFFERTY FARMS, INC.,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. S71C64.

United States District Court,
E. D. Missouri,
Southeastern Division.

Dec. 27, 1973.

James E. Reeves, Caruthersville, Mo., for plaintiff.

Donald J. Stohr, U. S. Atty., St. Louis, Mo., Michael C. Curney, Trial Atty., Tax. Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

WANGELIN, District Judge.

This action was commenced by the plaintiff Elott Raffety Farms, Inc., against the defendant United States of America for the refund of income taxes paid in the taxable years ending March 31 of 1964, 1967, 1968, 1969 and 1970.

Plaintiff claims deductions totalling $222,000.00 "advanced" by it to a farming enterprise in the Republic of Mexico. The enterprise succumbed to adverse weather and other growing conditions in 1966 and 1967. Timely claims for refunds were filed and denied by the Internal Revenue Service. 26 U.S.C. § 7422(a). The Court has jurisdiction of the subject matter of the action pursuant to 28 U.S.C. § 1346(a)(1). This action was tried to the Court sitting without a jury.

The plaintiff is a corporation that was organized in 1962 under the laws of the State of Missouri. Plaintiff, during the times material to this action, was and is engaged in the business of farming, and it has its principal place of business in Mississippi County, Missouri.

In Missouri in early 1965 plaintiff, through its president and principal stockholder, Elott H. Raffety, agreed orally with L. D. Joslyn, a Missouri attorney, and Rolwing-Moxley Company (hereinafter "Missouri partners") to conduct farming operations in Mexico. They agreed that plaintiff would own a one-half interest in the enterprise, and that Joslyn and Rolwing-Moxley Company would own one-quarter interests each. They agreed to share in the profits and losses of the enterprise according to their interests. They considered themselves general partners. They further agreed that, although each partner would have an equal share in the management and control of the enterprise, the farming operations were to be administered or managed in Mexico by Elott H. Raffety.

The decision to farm in Mexico originated with L. D. Joslyn. Joslyn owns a one-third interest in Rolwing-Moxley Company, a corporation engaged in ginning cotton and other farm products. Between 1960 and 1965 he visited Mexico and observed that cotton was being grown there in increasing amounts. He concluded that the cotton he observed was healthy and of good quality, and that the best cotton growing areas should produce from 1¾ to 2 bales per

acre. Since the prospects of Rolwing-Moxley Company in the Southeast Missouri cotton industry were considered poor, he interested Raffety and Rolwing-Moxley Company in forming a partnership for the purpose of farming in Mexico.

In the years 1961 through 1966 plaintiff owned four separate parcels of land consisting of 685.71 acres, 126 acres, 1290 acres, and 440 acres. Prior to 1965 approximately 5% of the 685.71 acres was used to grow cotton, and 1% of the remainder was used to grow cotton. In 1965, before *El Sombrero S. de R.L.* was set up, no cotton was raised on plaintiff's land. Joslyn had been engaged in farming since 1941, owning over 2,500 acres on part of which he grew cotton between 1961 and 1965.

The three partners employed Humberto Gutierrez Saldivar, a lawyer licensed in Mexico, to take whatever steps were necessary to enable them to farm there legally. Joslyn had conducted legal business in Mexico before, but he had no specific knowledge of business organizations under Mexican law. In 1965 Saldivar organized *El Sombrero Sociedad de Responsibilidad Limitada* (S. de R.L.), a limited responsibility company, to conduct the farming business. The organizational articles of *El Sombrero S. de R. L.* provided, *inter alia*, as follows:

1. The company's general purpose was the exportation of agricultural products. The company was empowered to lease ground, to process agricultural products, and to do all lawful acts related to the exportation of agricultural products.

2. The duration of the company was to be twenty years.

3. The business capital was fixed at 3,000,000 pesos, of which 2,000,000 pesos were to be contributed by Luis Vargas Nunez; 500,000 pesos by Juan Ledesma Facundo; and 500,000 pesos by Fernando Marino Villela.

4. None of the members of the company were able to ———— [blank space in documentary evidence] their shares or any portion thereof without the consent of the members represented, or at least three-fourths of the business capital.

5. Transfer by inheritance of the shares of deceased members required the consent of the majority of the remaining members. Otherwise, the shares of deceased members were to be liquidated and the proceeds distributed to the heirs.

6. The number of members was limited to twenty-five.

7. The business was to be conducted by one named administrator, Luis Vargas Nunez.

8. The members were required to meet annually.

9. An annual accounting was required.

10. The death or separation of any members was not cause for dissolution of the company.

11. The liquidation of the business was to be administered by the manager or a person designated by the assembly of members.

12. The fiscal year corresponded to the calendar year.

Joslyn and Raffety believed that this *Sociedad de Responsibilidad Limitada* was in the nature of a limited partnership that would operate as a straw party or agent of the three partners in Missouri. They believed that such an organization was required before they could farm on Mexican land. Saldivar never informed them of any other legal significance of the *S. de R.L.*, except that it was similar to a limited partnership. Also, he never furnished them any memoranda of law respecting the *S. de R.L.*

No conveyance or assignment of any interest in *El Sombrero S. de R.L.* was ever made to the plaintiff. The *S. de R. L.* never issued stock. No meeting of its members was ever held in Mexico. Raffety was acquainted with the three persons whose names appear as organizers in the articles. However, they did not

contribute any capital to the business nor did they perform any services for the company for which they were paid by plaintiff. Only Raffety managed the farming operations under the direction of the three Missouri partners. However, he did conduct the business operations under the name of *El Sombrero S. de R.L.*

Raffety moved to Mexico in April of 1966 and commenced farming operations. Approximately 7,300 acres of cotton were planted from June to August, 1966. A good stand of cotton came up and some of it was open when hurricane Inez hit in the first week of October. Before the hurricanes came, Raffety estimated the crop would average 1 or 1½ bales per acre. After the hurricane, less than 600 bales were harvested.

In 1967, Raffety again planted the 7,300 acres in cotton. The seasonal rains did not occur that year and the planting was to dry ground. In August some rain fell and the crops came up. Shortly thereafter, hurricane Beulah hit and drowned much of the cotton. Grass and weeds grew up and the fields could not be cultivated because of the moisture. Practically all of the 1967 crop was lost. In November and December, 1967, Raffety planted safflower. This crop was harvested in April and May, 1968, and the farming operations thereafter ceased.

In the fiscal years ending March 31, 1967 and 1968 plaintiff advanced $200,000.00 and $22,000.00 respectively, to the farming operation. Joslyn and Rolwing-Moxley Company each advanced $100,000.00 and $11,000.00 during these same years. In exchange for this money, no notes were issued. There were no provisions for interest. No interest was paid. There was no fixed maturity date for the repayment of the money. No security was established. And no money so advanced was required to be repaid to the plaintiff. None of this money was recouped.

Plaintiff contends that these "advancements" are either (1) ordinary business expenses deductible from income pursuant to § 162(a) of the Internal Revenue Code ("I.R.C."), 26 U.S.C. § 162(a)[1]; (2) operating expenses deductible from income under § 165(a) of I.R.C., 26 U.S.C. § 165(a)[2]; or (3) bad debt losses deductible from income under § 166(a)(1) of I.R.C., 26 U.S.C. § 166(a)(1)[3].

The United States contends that:

1. The taxpayer sustained capital losses under § 165 I.R.C. for the years ended March 31, 1969;

2. The "advances" were contributions to capital, not loans, and therefore, not deductible under §§ 162 or 166 I.R. C.;

3. The Mexican business organization through which the taxpayer operated, *El Sombrero S. de R.L.*, was an association taxable as a corporation; and,

4. The farming operations were non-deductible capital expenditures made for the acquisition of land.

■ Any income tax deduction is a matter of legislative grace, the right to which the plaintiff has the burden of proving. Interstate Transit Lines v. Commissioner of Internal Revenue, 319

1. The relevant portion of § 162(a) I.R.C. provides as follows:
   (a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
   (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, or property to which the taxpayer has not taken or is not taking title or in which he has no equity.

2. Section 165(a) I.R.C. provides as follows:
   (a) *General rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

3. Section 166(a)(1) I.R.C. provides as follows:
   (a)(1) *Wholly worthless debts.*—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943); Industrial Aggregate Company v. United States, 284 F.2d 639, 644 (8th Cir. 1960).

■ The first issue raised by the parties is whether *El Sombrero S. de R. L.* is an association taxable as a corporation. 26 U.S.C. § 7701(a)(3). Under the facts of this case, if it is not so taxable, then it is taxable as a partnership and the subject deductions may be claimed ultimately by the Missouri partners. A label affixed to a business organization by local law does not determine its status under the Internal Revenue Code. Rather, the Code determines how it is to be denominated upon a proper consideration of the legal relationships which characterize the subject organization under local law. Treas. Reg. § 301.7701–1(c). The Code regulations recognize six major characteristics ordinarily found in a pure corporation which distinguish it from other organizations, i. e. (1) associates, (2) an objective to carry on business and divide the gains therefrom, (3) continuity of life, (4) centralization of management, (5) liability for corporate debts limited to corporate property, and (6) free transferability of interests. Treas.Reg. § 301.7701–2(a)(1). Since both corporations and partnerships usually involve characteristics (1) and (2), only characteristics (3)–(6) are to be considered when deciding whether an organization is taxable as a corporation or as a partnership. Treas.Reg. § 301.7701–2(a)(2). An "[a]n unincorporated organization shall not be classified as an association unless such organization has more corporate characteristics than non-corporate characteristics." Treas. Reg. § 301.7701–2(a)(3).

■ Although this *S. de R.L.* is an association taxable as a corporation under the Code, the Court is of the opinion that it must be disregarded for tax purposes as it was but a passive entity.

In Jackson v. Commissioner of Internal Revenue, 233 F.2d 289, at 290 (2nd Cir. 1956), the Court stated as follows:

"A corporation may not be disregarded in respect to taxation if, *inter alia,* a bona fide intention in creating it was that the corporation itself should have some real substantial business function, or if it actually engages in business; on the other hand, the corporation may be disregarded, in the absence of such an intention or activity. The intended or actual business functioning of the corporation itself, not the taxpayer's aim to be accomplished via the corporation, is the test." (footnotes omitted).

The Court affirmed the Tax Court ruling that, although the taxpayers had as a purpose for the existence of the subject corporation's insulation from liability to creditors, these corporations performed no business function and were to be disregarded for tax purposes. *cf.,* Paymer v. Westrich Realty Corporation, 150 F.2d 334 (2nd Cir. 1945).

The *El Sombrero S. de R.L.* was not organized for the purpose of avoiding taxes. Rather, it was organized upon the advice of Mexican legal counsel to allow the Missouri partners to farm in Mexico without being in violation of Mexican law. However, the *S. de R.L.* performed no substantial business function. The organization was never capitalized nor managed according to the provisions of the organization articles. The farming operations were controlled by the Missouri partners and managed locally by Elott Raffety. When the farming business was liquidated in the Spring of 1968, the liquidation was not carried out by the nominal administrator, Nunez. There were no annual meetings or accountings ever held as required by the organization articles. The only apparent purpose of the organization was the use of its name by the farming operation. None of the Missouri partners were ever subscribers to the *S. de R.L.* articles, nor did they ever own any legal interest in the organization.

Under § 162 I.R.C. a farmer is entitled to deduct from gross income the ordinary and necessary expenses in carry-

ing on the business of farming. Treas. Reg. § 1.162–12. Clement v. United States, 331 F.Supp. 877, 882 (E.D.N. Car.1971). Each member of the Missouri partnership had been engaged in the business of farming in Missouri when they expanded their farming operations into Mexico. Defendant seeks to distinguish plaintiff's Mexican cotton growing operations from its earlier American farming by showing that, in the years immediately preceding 1966, plaintiff grew cotton on only small portions of its land. However, the evidence does not show any significant difference between the operation of the American and the Mexican farms which would give merit to defendant's distinction.

Under § 162 an expense is "necessary" if it is " 'appropriate and helpful' for 'the development of the [taxpayer's] business'." Commissioner of Internal Revenue v. Tellier, 383 U.S. 687, at 689, 86 S.Ct. 1118, at 1120, 16 L.Ed.2d 185 (1966), citing Welch v. Helvering, 290 U.S. 111, at 113, 54 S.Ct. 8, at 9, 78 L. Ed. 212 (1933). The Court In *Tellier* further stated that "[t]he principal function of the term "ordinary" in § 162(a) is to clarify the distinction, often difficult, between those expenses that are currently deductible and those that are in the nature of capital expenditures, which, if deductible at all, must be amortized over the useful life of the asset." 383 U.S. 689–690, 86 S.Ct. 1120. The defendant herein asserts that the subject monetary advances were contributions to capital and not expenses under § 162. The Court disagrees.

■ In United States v. General Bancshares Corporation, 388 F.2d 184, at 187–188 (8th Cir. 1968), the Court stated:

"Generally capital expenditures occur when an improvement or betterment is made to a capital asset (§ 263 I.R. C.) or an expense is incurred in the purchase or sale of a capital asset or the collection of capital proceeds. See 4A Mertens, Law of Federal Income Taxation, (1966 Rev.) § 25.20, Capital Expenditures . . . The precise slot into which a given expense is to be placed is at times extremely difficult to determine, as the expenses will often partake of the nature of both current and capital items. It, therefore, becomes necessary to view the expenses in context with the transaction in which they are incurred to assess their proper characterization."

Stated another way, "a business expense is tested by its normalcy and soundness considered in light of the taxpayer's trade or business." Wells-Lee v. Commissioner of Internal Revenue, 360 F.2d 665, 669 (8th Cir. 1966); e. g. MFA Central Cooperative v. Bookwalter, 286 F.Supp. 956, 961 (E.D.Mo.1968).

■ The Court has examined the evidence and finds and concludes that the amounts advanced to the Mexican farming operations by the Missouri partners were expended for labor, for the lease— not the purchase of land for planting, cultivating and other expenses normal and usual to farming operations. These were not capital expenditures but were deductible under § 162(a) I.R.C. Therefore, the Court finds it unnecessary to treat plaintiff's alternative claims to deductions.

The parties have stipulated that, should the Court find that the Mexican farm land was acquired by lease, $100,000.00 of the lease payments must be amortized over a five year period.

The parties have further stipulated, and the Court will so order, that they shall have thirty (30) days from this date in which the defendant will recompute the amount of refund due to the plaintiff, pursuant to the principles of this decision, and that the resulting recomputation will be the amount of the judgment to be entered.