DALLAS RUPE & SON, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 35688, 35689, 35690. Promulgated May 18, 1953.

*Robert F. Ritchie, Esq.,* for the petitioners.
*John W. Alexander, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: D. Gordon Rupe, Jr., Docket No. 35689, and Ruby L. Rupe, Docket No. 35690.

OPINION.

BLACK, *Judge:* As we have already stated, the Commissioner in his brief concedes error in his determination of a deficiency of $17,545.25 against the corporation Dallas Rupe & Son. Therefore we need not devote any time to a discussion of the assignment of error in that proceeding. That leaves for our decision only the issues raised in the cases of the individual petitioners. Petitioners made certain advances to the Dallas Symphony Orchestra. Petitioners claim that during the taxable year 1948 advances totaling $34,630.08 and constituting nonbusiness bad debts within the meaning of section 23 (k) (4) of the Code became worthless in that year. The applicable Code section is set forth in the margin.[3] The advances of $34,630.08 are

---

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(k) BAD DEBTS.—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(4) NON-BUSINESS DEBTS.—In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

made up of $17,878.91, which was advanced on or about January 2, 1948, by Dallas & Gordon Rupe, a partnership, for the account of petitioner and $16,751.17 which was advanced by the corporation Dallas Rupe & Son in 1947 for the account of petitioner but which was charged to the account of petitioner on September 30, 1948.

Respondent contends that both these sums constitute contributions. Respondent relies upon the fact that petitioners claimed on their 1947 income tax returns as a nonbusiness bad debt of $46,627, a debt owed to them by the symphony orchestra. Respondent reasons if the $46,627 was a bad debt on December 31, 1947, then the advance of $17,878.91 made 2 days later must of necessity have been a contribution since nothing occurred in the intervening 2 days that improved in any way the financial condition or outlook of the orchestra.

As to the $16,751.17 which was advanced in 1947 by Dallas Rupe & Son for the account of petitioner and which was actually charged to petitioners' account in September 1948, respondent contends that it also is a contribution. In the alternative, respondent contends that even if it be assumed that this sum was an indebtedness from the outset, this indebtedness existed on December 31, 1947, and should have been charged off with the $46,627. In the first place we do not have the year 1947 before us in these proceedings. The taxable year which we have before us in these proceedings is 1948 and what we have to decide is whether petitioners are entitled to a deduction as nonbusiness bad debts which became worthless in 1948, the sums of $17,878.91 and $16,751.17 which they had advanced to the symphony. That they had in fact made such advancements, the Commissioner does not dispute.

The fundamental question to be determined in this proceeding is whether the advances by the petitioners to the symphony were loans or were contributions. The character of the petitioners' advances, whether loans or contributions, depends upon a consideration and weighing of all the related facts and circumstances, especially the intention of the parties. The evidence well supports our conclusion that the advances were intended to be loans. Petitioners' contributions to the symphony were handled differently on their books from the advances. The petitioners recorded the advances on their books as loans. Moreover, the symphony on its books recorded the advances in the same way, that is, as loans from the petitioners. Most of the advances were made when funds were needed by the symphony rather than during the time when fund-raising campaigns were in operation. Officers of the symphony testified that they considered the sums in question as loans from the petitioners. For example Lanham Deal who was the business manager of Dallas Symphony during the period of time here in question, testified as to the nature of the advances made to the symphony as follows:

A. The true state of facts as I understand them in connection with Mr. Rupe's debt is that he personally, and that the firm which he represented and is a partner of, advanced money from time to time to the Dallas Symphony Orchestra for its operation, fully expecting to be repaid by the Dallas Symphony Orchestra. I accepted the money and deposited it in the bank with no thought other than it was a loan or an advance that would see us through until perhaps one of those campaigns would succeed to the point that we would have sufficient funds then that we could repay Mr. Rupe the money that he had advanced and still continue to operate.

Q. And how was it concluded?

A. It was finally concluded that the final evidence after the failure of the campaign in early 1948 headed by Mr. Thornton and Mr. Hulsey, that such funds would not be brought in by that campaign or perhaps any other thereafter, that would bring in money in such amount that the $133,000 indebtedness could be paid off at all, whether the orchestra folded or continued to operate. Therefore, Mr. Rupe instructed the business office that the $80,000 should be charged off as a bad debt and entered into the agreement that has been discussed on the recording royalty.

To be distinguished is our recent case, *Lucia Chase Ewing*, 20 T. C. 216, involving advances of money to a ballet company. We held there that the advances did not give rise to a debt because the obligation to repay was subject to a contingency that did not occur, and therefore no deduction was allowed under 23 (k). The facts in the instant proceeding are different; here a debt was owed to petitioners by the symphony and was definitely so recognized by all parties concerned. It was not dependent, insofar as being a debt was concerned, upon the happening of any contingency.

The only question remaining for decision is: Did the amounts here in question become worthless in 1948? We think they did. The testimony shows that petitioners were reassured on numerous occasions by the leading citizens of Dallas, particularly during the year 1947, that Dallas could not afford to lose the symphony and that they would undertake a campaign to raise the money to repay petitioners if petitioners would continue to maintain the symphony intact until such a campaign could be instituted. Such citizens included the presidents of some of the leading banks of Dallas and other leaders of Dallas industry and, although they did not personally promise to reimburse petitioners, their pledges of active support in a money-raising campaign constituted reasonable assurance that reimbursement would be forthcoming.

The campaign mentioned in the preceding paragraph was actually launched in February 1948, under the direction of two of the leading citizens of Dallas as cochairmen. The campaign was actively prosecuted and was widely advertised. It was plainly stated in the advertisements to all concerned that the drive was designed to raise $300,000 and that petitioners' advances were to be repaid out of said amount. Unfortunately the campaign resulted in failure, insofar as

raising funds to repay petitioner was concerned. Only enough funds were raised to take care of the expenses of the orchestra for its then current season. Nothing was available for the payment of petitioner's indebtedness. Under all the circumstances to be taken into consideration it seems clear that the $17,878.99 and $16,751.17 here involved became worthless in 1948 and we so hold.

> *In Docket No. 35688 decision will be entered for the petitioner.*
>
> *In Docket Nos. 35689, 35690 decisions will be entered under Rule 50.*

