TEMPO II SUNRISE, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tempo II Sunrise, Inc. v. Commissioner
Docket No. 38107-84.
United States Tax Court
T.C. Memo 1988-346; 1988 Tax Ct. Memo LEXIS 377; 55 T.C.M. (CCH) 1459; T.C.M. (RIA) 88346; August 3, 1988. Phillip Gibbons, for the petitioner. Margaret Martin, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By a notice of deficiency dated August 9, 1984, respondent determined deficiencies in petitioner's Federal income tax for taxable years ending June 30, 1978 and June 30, 1979, in the amounts of $ 12,361 and $ 26,692, respectively. Respondent also determined that petitioner was liable for an addition to tax for the taxable year 1979 under section 6651 [1] for late filing. After concessions, *379 [2] the issues for our consideration are (1) whether petitioner properly claimed its distributive share of a partnership loss in taxable year ending June 30, 1978, and (2) whether petitioner properly claimed a deduction for an uncollectible debt in taxable year ending June 30, 1979. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated herein by this reference. Petitioner Tempo II Sunrise, Inc. (Tempo or petitioner), was incorporated on June 27, 1977, under the laws of the State of California, and maintained its sole place of business in Sacramento, California. Petitioner filed Federal income tax returns with the Internal Revenue Service Center in Fresno, California, for the taxable years before us. During the years in issue, Tempo was in the business of developing and constructing residential housing. From the date of incorporation and throughout the years in issue, the board of directors consisted of Richard A. Martin (Martin), *380 Greg Moore (Moore) and Robert Harner (Harner). Tempo's officers consisted of Martin as the president, Moore as vice president and Harner as secretary/treasurer. The seven shareholders owned the following percentages of stock: Shareholder
Percentage of Common Stock Owned
Richard A. Martin
34.375
Greg Moore
34.375
Sidney Green
12.500
Robert Harner
6.250 Leo Speckert
6.250 Levi Kuhn
3.125 Allen Martin
3.125 Martin and Moore were also equal shareholders in the Double M Corporation (Double M) which was organized under the laws of the State of California. Throughout the years in issue, Double M maintained its sole place of business at Tempo's address in Sacramento, California. Double M was engaged in the business of acquiring and developing real estate. Martin and Moore were, during the years in issue, the sole shareholders, directors and officers of Double M, although only Moore participated in the day-to-day operations. In July 1977, Double M decided to acquire a parcel of property in North Highlands, California, known as "North Highlands Estates II" (Highlands Estates) to develop as residential real estate. Highlands Estates had been subdivided *381 into approximately 90 lots, but was otherwise unimproved. Believing that the Highlands Estates project offered an attractive investment for Tempo, Martin and Moore called a meeting of the other Tempo shareholders to explain the proposition. The shareholders agreed that Tempo should form a partnership (the partnership) with Double M for the purpose of developing Highlands Estates. A memorandum evidencing the meeting and authorizing Tempo's entry into the partnership was signed by all the shareholders. Tempo and Double M entered into the partnership in July 1977, pursuant to an oral contract. The oral partnership agreement provided that Tempo would contribute all the funds necessary to purchase the Highlands Estates property but title would be held by Double M. Until such time as partnership profits from the sale of the developed lots equalled the amount of Tempo's capital contribution, partnership losses and gains would be allocated to Tempo to the extent of its capital contribution. After Tempo's investment had been returned in full, partnership profits and losses would be shared equally by Tempo and Double M. Double M was to keep the partnership books and records and handle *382 the actual work. On August 24, 1978, Tempo paid Double M $ 112,000 with two checks drawn on the United California Bank. In August 1977, the partnership purchased the Highlands Estates property and put title in the name of Double M. Between August 1977 and June 30, 1978, 90 lots were developed by the partnership. The costs of development were financed by a loan in an unspecified amount [3] obtained from the Securities Intermountain Company (SIMCO), a wholly owned subsidiary of a northwestern bank. [4]SIMCO is no longer in business and neither Tempo nor Double M was able to obtain records of SIMCO's loan to the partnership. The collateral of the loan was a certificate of deposit owned by Tempo. The interest due on the loan was paid by Double M but Tempo received the interest on the certificate of deposit. Tempo contributed other unspecified amounts of money to the partnership as need arose. On July 1, 1978, the partnership sold all of the developed lots to Hoffman Construction Company (Hoffman), generating *383 a profit in the approximate amount of $ 200,000. Rather than returning the profit from the Highlands Estates sale to the shareholders of Tempo, Martin and Moore invested it all in a new development project called Parkway West. Parkway West was ultimately financially disastrous, causing the ruin of Double M. In the breakup and dissolution of the business, all of Double M's books and records were lost, including those which pertained to the partnership. Because the profit from Highlands Estates had been invested and lost in the failed Parkway West project, Tempo never received a return of its capital contribution. Although Tempo kept a duplicate set of books and records with respect to the partnership for its own use, it could not produce those records at trial. All of Tempo's records had been loaned to a Tempo shareholder who requested them in connection with a personal tax audit and who failed to return them. Martin stated that he had traced the books and records to the shareholder's CPA, but that individual was no longer employed in the place he had worked during the shareholder's audit and could not be located. Apparently he took the Tempo books and records with him or *384 gave them to someone else. On its Federal income tax returns, Forms 1120, for taxable years ending June 30, 1978 and June 30, 1979, Tempo claimed deductions in the amounts of $ 33,778 as a loss from the partnership activity, and $ 186,881 as a worthless debt owed by Double M to Tempo, respectively. Tempo also reported income attributable to the Highlands Estates partnership in the amount of $ 101,651 for taxable year ending June 30, 1979. The partnership did not file any income tax returns for any of the taxable years of its existence. Respondent disallowed both of the deductions Tempo had claimed. OPINION The first issue for our consideration is whether petitioner properly claimed a loss for its distributive share of the partnership's loss in the amount of $ 33,778 in taxable year ending June 30, 1978. The claimed loss was exclusively attributable to the payment of certain loan fees necessary to obtain financing from SIMCO to develop the property. Respondent disallowed the claimed loss because petitioner failed to produce books and records to substantiate the existence of the loan and the loan fees. Petitioner contends that because the partnership agreement allocated *385 all the pre-profit losses to petitioner, the claimed loss of $ 33,778 is allowable under section 704(a) which provides, in pertinent part, that the partner's distributive share of income or loss is determined according to the provisions of the partnership agreement. Petitioner bears the burden of proof. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Whether petitioner and Double M formed a partnership and are thus subject to the rules and regulations of Subchapter K requires an inquiry into the facts and circumstances. The test for the existence of a partnership is whether "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." Commissioner v. Culbertson,337 U.S. 733, 742 (1949). The Supreme Court further advised that the criteria to be used in determining the existence of a partnership include: all the facts -- the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income, *386 and the purposes for which it is used and any other facts throwing light on their true intent. [337 U.S. at 742.] Section 701 provides that a partnership is not subject to income tax but rather that the partners are liable for the tax in their individual capacities. Sections 702 and 706 provide that partners are taxed on their distributive shares of partnership taxable income in the year such income is earned, regardless of whether and to what extent they actually receive distributions from the partnership. Sec. 1.702-1(a), Income Tax Regs. The partner must include his distributive share in income even if he does not know that partnership income has been earned. Beck Chemical Equipment Corp. v. Commissioner,27 T.C. 840, 855-856 (1957); Klein v. Commissioner,25 T.C. 1045, 1051 (1956). [5] Section 704 provides, in pertinent part, that the partner's distributive share of partnership income is determined by the terms and conditions of the partnership agreement, [6] although section 704(d) limits a partner's deduction of his distributive share of partnership losses to the extent of his adjusted basis in his partnership interest. *387 Petitioner's evidence at trial consisted only of testimony by Martin and Moore, the sole shareholders of Double M and the controlling shareholders in Tempo. In describing the events relating to Tempo's investment in the partnership, Martin and Moore were consistent and their testimony is worthy of our belief. Based on the record before us, we conclude that Tempo and Double M did form a partnership in July 1977 for the purpose of developing the Highlands Estates property. The cancelled checks establish that Tempo contributed at least $ 112,000 to the partnership and Double M made no financial contribution. The Highlands Estates project was eventually completed and, in July 1978, the developed units were sold to Hoffman at a profit although there is not enough evidence in the record to determine the exact sales price. Finally, both Martin and Moore agree that Tempo never received any money from the partnership. Nonetheless, the record before us lacks certain important information. For example, neither Martin nor Moore could recall the precise amount of money which was transferred from Tempo to Double M during the taxable years in issue or how much the partnership actually received *388 from the sale of the developed Highlands Estates units to Hoffman. They could not remember how much money was borrowed from outside lending institutions to finance development of Highland Estates nor how much money was invested and lost on the Parkway West project. They also failed to explain the circumstances surrounding the purported debt from Double M to Tempo. Furthermore, almost all of the documents which could substantiate the alleged transactions between Tempo, Double M and the partnership were lost and thus could not be produced for trial. Not only were Double M's books and records misplaced during corporate dissolution, but Tempo's books and records were never reclaimed after having been loaned to a shareholder. The partnership never kept any independent books and records. While it is not uncommon for books and records to be occasionally lost or destroyed, it is most unusual that all the books and records relating to transactions between three separate entities for a period of two years could disappear without a trace. Compounding this unfortunate coincidence, none of the records of the partnership's loan from SIMCO could be produced for trial. Neither Martin nor *389 Moore could remember the terms and conditions of the loan or the precise amount that was received. In fact, petitioner could only offer into evidence Tempo's corporate income tax returns, Forms 1120 (Tempo's returns), and the copies of two cancelled checks to support its account of the events in question. Unfortunately, petitioner's failure to produce probative corroborative evidence leaves us with our hands tied. An income tax deduction exists purely due to legislative grace and the burden of proving it is properly claimed rests on petitioner's shoulders. Interstate Transit Lines v. Commissioner,319 U.S. 590 (1943); New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). In light of the thin and incomplete record, we cannot subscribe to petitioner's entire version of events. Although we found Martin and Moore to be generally believable witnesses, they were unable to supply crucial information. Because petitioner was incapable of proving either the existence or the amount of the loan it allegedly obtained from SIMCO, we cannot conclude that petitioner paid the loan fees and, therefore, we hold that Tempo improperly claimed a deduction *390 in the amount of $ 33,778 for taxable year ending June 30, 1978. The second issue for our consideration is whether petitioner properly claimed a deduction for a bad debt realized in June of 1979. Tempo claimed a deduction in the amount of $ 186,881 as a bad debt in taxable year ending June 30, 1979. Section 166 allows a deduction for any debt that becomes worthless in the taxable year. In order to generate a deduction for a bad debt, there must have been "a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166-1(c), Income Tax Regs. In order to claim a deduction for a bad debt a taxpayer must have advanced the money with the intention of creating a debt for which he would be repaid. Garrett v. Commissioner,39 T.C. 316 (1962). The burden of proving that there was a debt and that it had become worthless is placed on petitioner. Dallas Rupe & Son v. Commissioner,20 T.C. 363 (1953). Petitioner has failed to demonstrate either the amount of the alleged obligation or that Double M had a valid and enforceable obligation to pay Tempo the money. Martin and Moore testified *391 that after the profitable sale of the Highlands Estates property to Hoffman, the sale proceeds were retained by Double M for the purpose of developing the Parkway West property. They did not explain whether Tempo and Double M considered this arrangement a loan nor did they establish that Tempo and Double M believed that they had created a valid and enforceable obligation that Double M would repay. Martin explained that Tempo claimed a deduction in an amount equal to the sum of all the contributions which Tempo had made to Double M throughout the development of the Highlands Estates property. However, petitioner did not offer any documentation to support the validity of the claimed amount. [7]
Petitioner's failure to introduce adequate evidence to support its positions dictates the determination of this issue. Because there was no proof that Tempo loaned the proceeds from the sale of *392 the Highlands Estates property to Double M, we cannot find that Double M had a valid and enforceable obligation to repay Tempo. Furthermore, petitioner failed to establish the exact amount of the alleged loan. In light of petitioner's failure to supply the necessary evidence, we conclude that Double M did not have a binding obligation to repay Tempo for a loan in the amount of $ 186,881 and that Tempo improperly claimed a bad debt deduction on its return. Petitioner argues, in the alternative, that it improperly included in income its distributive share of profits earned by the partnership in the amount of $ 101,651 in taxable year ending June 30, 1979. Petitioner argues that either a corresponding loss should be allowed or the income deleted, to reflect the fact that it never received either the profit or a return of its profit. However, petitioner's own evidence precludes us from concurring in its request. Martin testified quite emphatically that the transfer of Tempo's distributive share of partnership profits to Double M constituted a loan and was neither a continuation of partnership activity nor a new joint venture. To hold that a new investment and a subsequent loss *393 occurred would directly contradict the evidence. Furthermore, the record does not establish that the loss from the Parkway West project could be ascertained prior to June 30, 1979. Because we have determined that Tempo and Double M did not establish the existence of a loan and that Tempo did not invest directly in the Parkway West project, we conclude that it would be improper to delete the distributive share of partnership profits from petitioner's taxable income or to allow a corresponding loss for the taxable year ending June 30, 1979. Thus, after considering all the evidence and weighing all the arguments, we conclude that Petitioner failed to prove that it properly claimed deductions in taxable years ending June 30, 1978 and June 30, 1979, in the amounts of $ 33,778 and $ 186,881, respectively. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioner conceded that it was liable for an addition to tax for late filing with respect to its Federal income tax return for tax year ending June 30, 1979. ↩
3. Moore was only able to estimate that the loan was "several hundreds of thousands of dollars." ↩
4. The parent bank was either the Bank of Oregon or the Bank of Washington. ↩
5. See Cipparone v. Commissioner,T.C. Memo. 1985-234↩ (taxpayer must include distributive share of partnership income pursuant to the terms of the partnership agreement even where the taxpayer's share is embezzled without taxpayer's knowledge). 6. See Stern v. Commissioner,T.C. Memo. 1984-383↩ (distributive share determined even under oral partnership agreement). 7. Martin, relying on the amount of the deduction which was actually claimed on Tempo's return, stated that the amount of the debt must have equalled the amount of the deduction. However, that proposition is not self-evident. Roberts v. Commissioner,62 T.C. 834, 837↩ (1974).