GENARO L. MAZZUCA and TAMMY S. DELANEY, F.K.A. TAMMY S. MAZZUCA, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mazzuca v. Commissioner
Docket No. 31874-87
United States Tax Court
T.C. Memo 1991-116; 1991 Tax Ct. Memo LEXIS 129; 61 T.C.M. (CCH) 2167; T.C.M. (RIA) 91116; March 18, 1991, Filed *129 Decision will be entered under Rule 155.
Edward R. Joyce, for the petitioner. James A. Kutten, for the respondent. SHIELDS, Judge. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION In separate notices of deficiency dated June 19, 1987, respondent determined a deficiency of $ 4,087 in each of petitioner's Federal income tax for 1980. Respondent also determined that an addition to tax of $ 3,901 under section 6653(b) [1] *130 was due from petitioner Genaro L. Mazzuca. [2] After concessions the issues remaining for decision are: (1) Whether petitioners failed to report income earned through participation in a pyramid investment scheme; (2) whether petitioners are entitled to deductions for certain payments allegedly made to other participants in the pyramid scheme who did not recover their investments; (3) whether petitioner, Tammy S. Delaney, qualifies for relief as an innocent spouse within the meaning of section 6013(e); (4) whether petitioner, Genaro L. Mazzuca, is liable for the addition to tax pursuant to section 6653(b); and (5) whether an assessment for 1980 is barred by the statute of limitations. FINDINGS OF FACT Some of the facts have been stipulated and are so found, the stipulation of facts and exhibits associated therewith being incorporated herein by reference. At the time their petition was filed, petitioners were residents of Missouri. Petitioners who were man and wife during 1980 filed a joint Federal income tax return for 1980 on June 22, 1981. They were subsequently divorced. On their 1980 return petitioners reported the receipt of gross income as follows: Wages
$ 44,720
State Income Tax Refund
69
Unemployment Compensation
721
Business Men's Venture
500
$ 46,010
During 1980 petitioner, Genaro L. Mazzuca, who is hereinafter referred to as petitioner in the singular, was part owner of an automobile dealership. He also participated in a pyramid investment program known as Business Men's Venture (BMV) with the objective of making a profit. The activities of BMV during 1980 have been involved in other litigation. See Short v. Commissioner, T.C. Memo 1990-370; *131 Cima v. Commissioner, T.C. Memo 1987-284. Its operation was described in its own literature as follows: Business Men's Venture is a private investment club which offers each member the exact same opportunity to earn a maximum of $ 64,000. Here's how it works: Each person pays $ 1,000 to join the club: a $ 500 membership fee and a $ 500 sponsor fee. This new club member then sponsors two other persons to join the club and receives a $ 500 sponsor fee from each of these persons, thus the new member receives back his/her original investment of $ 1,000. The membership fees of $ 500 for each of the two other persons are paid by cashier check to a member exactly seven levels above the point at which a new member joins. Each member's name is maintained by a club secretary on a seven level chart. As the membership continues to grow, each member's name will reach the seventh level. At this level, 128 new members will pay their membership fee for $ 500 ($ 64,000 Total) to the member. All membership fees are personally collected and distributed by the club secretary. The club secretary is paid $ 500 by each member at the time the member receives the first of *132 the 128 membership fees. The club does not promise or guarantee [its] members any considerations for joining the club. Each person pays the same fees and has the same opportunity to earn $ 64,000, regardless of their position on the chart. The purpose of joining the club is simply to be a member. The opportunity to receive $ 64,000 is dependent on the members ability to promote memberships and the growth which results.
At trial 45 cashier's checks each in the amount of $ 500 were admitted into evidence and the parties stipulated that 27 of them (hereinafter referred to as the stipulated checks) constitute income received by petitioner in 1980 from his participation in BMV. Respondent concedes that one of the other 18 checks does not constitute income to petitioner. The remaining 17 cashier's checks are still in dispute. They are hereinafter sometimes referred to as the disputed checks. The 17 disputed checks fall into four groups. The first group consists of three checks which were cashed at Southwest Bank by petitioner on March 4, 1980, along with 16 of the stipulated checks. The bank's records contain the following information regarding these 19 checks: Bank's
Payee
Final Endorser
Clear
Proof Number
Stip-
Teller
Date
ulated
Stamp
Check
Number
Genaro Mazzuca
Genaro L. Mazzuca
3/5/80
555519059
Yes
10
Genaro Mazzuca
Genaro Mazzuca
3/5/80
555519060
Yes
10
Genaro L. Mazzuca
Genaro Mazzuca
3/5/80
555519061
Yes
10
Genaro L. Mazzuca
Genaro Mazzuca
3/5/80
555519062
Yes
10
Genaro Mazzuca
Genaro Mazzuca
3/5/80
555519063
Yes
10
L.Genaro Mazzuca
Genaro Mazzuca
3/5/80
555519064
Yes
10
Genaro L. Mazzuca
Genaro Mazzuca
3/5/80
555519065
Yes
10
Bud Overhuel
Jo Mazzuca *
3/5/80
555519066
No
10
Bud Overhuel
Joseph Mazzuca *
3/5/80
555519067
No
10
Bud Overhuel
Jo Mazzuca *
3/5/80
555519068
No
10
Genaro L. Mazzuca
Genaro L. Mazzuca
3/5/80
555519069
Yes
10
Genaro L. Mazzuca
Genaro L. Mazzuca
3/5/80
555519070
Yes
10
Genaro L. Mazzuca
Genaro Mazzuca
3/5/80
555519071
Yes
10
Genaro L. Mazzuca
Genaro Mazzuca
3/5/80
555519072
Yes
10
Genaro Mazzuca
Genaro Mazzuca
3/5/80
555519073
Yes
10
Genaro Mazzuca
Genaro Mazzuca
3/5/80
555519074
Yes
10
Genaro Mazzuca
Genaro L. Mazzuca
3/5/80
555519075
Yes
10
Genaro L. Mazzuca
Genaro L. Mazzuca
3/5/80
555519076
Yes
10
Genaro Mazzuca
Genaro Mazzuca
3/5/80
555519078
Yes
10
*133 Petitioner admits that from the proceeds of BMV checks he purchased from Southwest Bank on March 4, 1980, two cashier's checks each in the amount of $ 4,500. The second group of disputed checks consists of two checks which were admittedly deposited into petitioners' personal checking account. The third group of disputed checks consists of three checks on which petitioner is the last endorser and which were deposited in the bank account of his automobile dealership. The fourth group of disputed checks consists of nine checks which petitioner cashed and used the proceeds therefrom to make loans to other individuals who wished to invest in BMV but who were unable to purchase cashier's checks for themselves. At some time thereafter these individuals repaid petitioner. Petitioner made little if any attempt to keep records of his BMV participation because he was told by *134 BMV that at the end of the year each participant would receive a Form 1099 and that all members as well as the Internal Revenue Service would have access to the records of BMV. Petitioner claims that the records he had were destroyed in a flood which occurred at the home of his ex-wife in December of 1982. Rule 6 of the BMV Club Rules stated: All income resulting from membership in the club is taxable income and should be reported as "other income" by each individual member. Since the club itself has no income nor expenses it does not report. However, the club does maintain duplicate records of all transactions and can compute the income of each member.
During 1980 petitioner made payments to three individuals who invested in BMV at his request and with the understanding that he would reimburse them for any losses. He made these payments in order to reimburse the individuals for the amounts they lost in the scheme. Specifically, he paid $ 500 to Terry P. Zinser and $ 1,000 each to Eugene R. O'Donnell and Earnestine Bruns. Petitioner and Tammy S. Delaney were married in December of 1979. During 1980 she was not aware of his participation in BMV. She also had no knowledge *135 of his participation in the automobile dealership. Petitioner never discussed BMV or the dealership with her or told her that he had invested in BMV. She was aware of BMV's existence in 1980 but did not know that petitioner, other members of his family, or even that her own stepfather were participants in the scheme. Neither petitioner nor the accountant who prepared the joint income tax return for petitioners for 1980 discussed its contents with her. Petitioner merely indicated the place on the return where she should sign. OPINION (1) Unreported Income
We agree with respondent that the 17 disputed checks constitute taxable income to petitioners for the reasons set forth and discussed below with respect to each of the four groups. The first group, consisting of three BMV checks, were used by petitioner together with 16 other BMV checks, according to respondent, to purchase two cashier's checks from Southwest Bank. Petitioner's denial that the three checks were so used is unworthy of belief in view of other stipulated facts as set forth in our findings. For instance petitioner stipulated that 16 other BMV checks were used to purchase the cashier's checks on March 4, *136 1980. He further stipulated that the checks in dispute in this group cleared the bank on March 5, 1980 and sequentially were the eighth, ninth, and tenth BMV checks in a group of 19 which cleared at the same time. Petitioner testified that he used BMV checks to purchase two cashier's checks each in the amount of $ 4,500 or a total of $ 9,000. Since each of the BMV checks were in the amount of $ 500 it follows that it would have taken 18 checks to cover the purchase. The bank's proof numbers on 18 of the 19 checks clearing the bank on March 5, 1980 are not only consecutive [3] but they all bear the same teller number. Furthermore, the record contains no evidence of the cashing of any other group of BMV checks in a sufficient dollar amount to enable petitioner to make the admitted purchase of the cashier's checks. Therefore, we are satisfied that the three checks in the first group were used by petitioner in the purchase of the cashier's checks and constitute taxable income to him. *137 The fact that the last endorsement on all three of the checks is the name of an individual other than petitioner does not change our conclusion because the handwriting of the last endorsement is similar to that of petitioner. In addition, at trial petitioner was unable to deny that the final endorsement on the checks had not been made by him. The second group of disputed checks consists of two BMV checks which petitioner testified were deposited in his personal bank account. Since the record contains no further evidence with respect to these checks we find that they represent funds received by petitioner from his participation in BMV and as such constitute taxable income to him. The third group of checks consists of three BMV checks which were deposited to the account of the automobile dealership of petitioner. Petitioner argues that these three checks were received by the dealership from other BMV investors in return for repair work performed by the dealership. In support of this argument he points to the receipt numbers which appear on the back of the checks. However, two of the checks bear the same receipt number even though the last endorsers before the endorsement for *138 the dealership are different individuals. At trial petitioner was unable to offer a satisfactory explanation of how checks from two different individuals were assigned the same receipt number. Furthermore, the record contains no business record, invoice, receipt, or other evidence tending to corroborate his claim; and on the whole, his testimony with regard to these three checks is unpersuasive and of little probative value. Therefore, we conclude that the three checks represent taxable receipts by petitioner from BMV. The fourth group of checks consists of nine BMV checks. On one of the checks petitioner is the payee. On eight of the checks he appears as the final endorser. Petitioner admits that he cashed all nine of these checks but that he did not retain the proceeds therefrom. Instead he claims that he used the proceeds to purchase cashier's checks for other individuals who wished to join BMV but were unable to purchase cashier's checks for themselves. Respondent contends that even if true petitioner's contention with respect to these checks does not cause the checks to be nontaxable income. Instead, they merely represent his receipt of taxable income from BMV and its *139 reinvestment as loans to the other individuals. We agree with respondent and conclude that the nine checks in this group represent taxable income to petitioner. (2) Deductions for Payments made to other BMV Participants
Petitioners contend that they are entitled to reduce their BMV earnings by $ 6,000 for payments allegedly made to other BMV investors. Petitioner testified that he gave $ 3,000 to a Hank Salaveck to repay individuals who had invested in BMV but had not recovered their investment. He said that he gave Salaveck the $ 3,000 for this purpose because Salaveck on behalf of petitioner had promoted BMV to new participants. At trial petitioner testified that he did not know the names of the participants to whom Salaveck made the payments and that Salaveck was deceased and not available as a witness. Petitioner did not produce any receipts either from Salaveck or from the recipients of the funds. We are not required to accept petitioner's unsubstantiated, uncorroborated, and self-serving testimony regarding the alleged payments made to or by Salaveck. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Consequently, in the absence of any corroborating *140 evidence the deduction claimed by petitioners must be denied. Petitioner also testified that he paid $ 500 to Lily Grass for money which she had invested at his request and lost in BMV and that he was unable to produce her at trial because he could not locate her. However, a witness for respondent testified that he had located and spoken to Ms. Grass during the evening before the trial. Under these circumstances the failure of petitioner to call Ms. Grass as a witness supports an inference that, if produced, her testimony would not have been favorable to him. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Accordingly, petitioners have failed to carry their burden of proof on this issue and a deduction for a payment to Ms. Grass is denied. Petitioner also claims to have paid $ 500 to Terry P. Zinser and $ 1,000 each to Eugene R. O'Donnell and Earnestine Bruns in order to reimburse them for investments made at his request but lost in BMV. All three of these individuals testified in a believable forthright manner that they invested in BMV at the request of petitioner and with the *141 understanding that he would see that they did not lose their investment. Respondent, however, contends that petitioner is not entitled to deduct the payments because he was under no legal obligation to make them. Respondent characterizes the payments as personal expenditures and argues that they were gifts which do not rise to the level of a deductible expense. The pertinent inquiry with respect to the deductibility of an expenditure is whether under the circumstances it is ordinary and necessary. The existence of a contractual obligation to make a payment which is not ordinary and necessary does not create a deduction. Commissioner v. Lincoln Saving & Loan Association, 403 U.S. 345, 359, 29 L. Ed. 2d 519, 91 S. Ct. 1893 (1971); Interstate Transit Lines v. Commissioner, 319 U.S. 590, 87 L. Ed. 1607, 63 S. Ct. 1279 (1943); Dolese v. United States, 605 F.2d 1146 (10th Cir. 1979); Swed Distributing Company V. Commissioner, 323 F.2d 480 (5th Cir. 1963). Conversely, the fact that an ordinary and necessary expenditure is made pursuant to an obligation which is not legally enforceable does not per se cause the expenditure to be nondeductible. Swed Distributing Company *142 , supra; Dunn & McCarthy v. Commissioner, 139 F.2d 242 (2d Cir. 1943). We are satisfied and have so found that petitioner participated in BMV with the objective of making a profit. We are also satisfied that the payments were made pursuant to oral guarantees by petitioner, that the payments were reasonable in amount, and that they bore a reasonable and proximate relation to the income which petitioner hoped for and did realize from his investments in BMV. See sec. 1.212-1(d), Income Tax Regs.; see Bingham's Trust v. Commissioner, 325 U.S. 365, 370, 89 L. Ed. 1670, 65 S. Ct. 1232 (1945). We are also satisfied on this record that the making of the guarantees and of payments pursuant to such guarantees was a usual and customary practice. We conclude, therefore, that the payments made to these three individuals are deductible. Deputy v. Du Pont, 308 U.S. 488, 495-496, 60 S. Ct. 363, 84 L. Ed. 416 (1940). (3) Innocent Spouse
If a joint income tax return is filed, the liability of each spouse with respect to the tax is joint and several. Sec. 6013(d)(3). However, one of the spouses to a joint return for a taxable year may be relieved of liability for the tax due for that *143 year if the following conditions are met: (a) A joint return has been made for the taxable year, (b) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (c) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was a substantial understatement, and (d) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to the substantial understatement. Sec. 6013(e)(1). The burden is on the spouse claiming relief (Ms. Delaney in this case) to prove that the requirements of section 6013(e) are satisfied. Adams v. Commissioner, 60 T.C. 300, 303 (1973). The parties agree that a joint return was filed. Therefore the first requirement of section 6013(e) is met. In order to qualify for innocent spouse relief there must be a substantial understatement of tax as the result of grossly erroneous items. Sec. 6013(e)(1)(B). The term grossly erroneous is defined as: (1) Any item of gross income omitted from gross income, and (2) any claimed deduction, *144 credit, or basis in an amount for which there is no basis in fact or law. Sec. 6013(e)(2). In this case we have found that petitioner clearly omitted substantial amounts from gross income. Consequently such omissions constitute grossly erroneous items and represent a substantial understatement. It also appears that petitioner may have claimed substantial deductions for which there are no basis in law or fact. However, where an understatement of income tax on a joint return is attributable to the disallowance of claimed deductions the relief afforded by section 6013(e) is not allowable unless the liability of the spouse claiming the relief for the year under consideration exceeds a specified percentage of the adjusted gross income of such spouse for the taxable year preceding the date the deficiency notice was mailed. Sec. 6013(e)(4)(C). Since the record in this case does not contain a copy of Ms. Delaney's return for 1986, the year preceding the deficiency notice, or any other evidence from which we can determine her adjusted gross income for 1986, she does not qualify as an innocent spouse for that part of the 1980 tax liability which is attributable to the disallowed deductions. *145 To qualify for innocent spouse relief for that part of the tax liability attributable to the omitted income Ms. Delaney is required to show: (1) That in signing the return she did not know, and had no reason to know, of the omission, and (2) that taking into account all the facts and circumstances, it is inequitable to hold her liable for the deficiency. The standard to be applied in determining whether an individual claiming relief as an innocent spouse had reason to know of an omission is one of reasonableness; that is, would a reasonably prudent person in the same position as the taxpayer claiming innocent spouse status know or have reason to know that the income was omitted from the joint return. Sanders v. United States, 509 F.2d 162, 166-167 (5th Cir. 1975). Ms. Delaney was not married to petitioner until December of 1979. We have found that during 1980, the year following their marriage, she was not aware of petitioner's participation in BMV or of his other business activities; that during 1980 petitioner made no attempt to keep records of his participation in BMV; that the accountant who prepared the 1980 return did not go over the return with her; *146 and that petitioner merely gave her the 1980 return and told her where to sign it. We conclude, therefore, that Ms. Delaney did not know and had no reason to know that the BMV income of petitioner was omitted from the return. Finally, we must determine whether after taking into account all the relevant facts and circumstances in this case it is inequitable to hold Ms. Delaney liable for the deficiency in tax. The term inequitable as defined in section 1.6013-5(b), Income Tax Regs., is as follows: Whether it is inequitable to hold a person liable for the deficiency in tax * * * is to be determined on the basis of all the facts and circumstances. In making such a determination a factor to be considered is whether the person seeking relief significantly benefited, directly or indirectly, from the items omitted from gross income. However, normal support is not a significant "benefit" for purposes of this determination. * * * Other factors which may also be taken into account, if the situation warrants, include the fact that the person seeking relief has been deserted by his spouse or the fact that he has been divorced or separated from such spouse.
As previously indicated *147 Ms. Delaney and petitioner were married in December of 1979 and were divorced before the trial of this matter. During 1980, the tax year involved in this case, petitioner participated without her knowledge in BMV and did not, as set out in our findings, inform her of his earnings therefrom. Under these circumstances and in the absence of any evidence in the record of any unusual or extravagant purchases or other substantial expenditures during their marriage we are unable to conclude that she received any significant benefit from the omitted income. The benefit she received, if any, from such income was in the nature of ordinary support. We conclude therefore that it would be inequitable to hold her liable for the deficiency in tax attributable to the income omitted by petitioner. See Terzian v. Commissioner, 72 T.C. 1164, 1172-1173 (1979); Mysse v. Commissioner, 57 T.C. 680, 698-699 (1972). (4) Fraud
On the issue of fraud respondent has the burden of proving by clear and convincing evidence that an underpayment in tax exists for 1980 and that some portion of the underpayment is due to fraudulent acts by petitioner. Sec. 7454(a); *148 Rule 142(b); Lee v. United States, 466 F.2d 11 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court; Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); Wilson v. Commissioner, 76 T.C. 623 (1981), supplemental opinion 77 T.C. 324 (1981); Green v. Commissioner, 66 T.C. 538 (1976); Arlette Coat Co. v. Commissioner, 14 T.C. 751 (1950). The existence of fraud is a question of fact to be resolved from a consideration of the entire record. Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980); Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Stratton v. Commissioner, 54 T.C. 255, 284 (1970). Fraud is never imputed or presumed; and a suspicion, however strong, is insufficient to sustain a finding of fraud. It must be established by independent evidence of a fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). To establish *149 fraud in this case respondent must show by clear and convincing evidence that petitioner intended to evade a tax, which he knew was owed, by conduct intended to conceal, mislead, or otherwise prevent its collection. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020, 21 L. Ed. 2d 565, 89 S. Ct. 627 (1969); Webb v. Commissioner, 394 F.2d 366, 377-378 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Acker v. Commissioner, 26 T.C. 107 (1956), affd. in part, revd. in part 258 F.2d 568 (6th Cir. 1958), affd. 361 U.S. 87 (1959); Kellett v. Commissioner, 5 T.C. 608 (1945). The fraud must be affirmatively established. Drieborg v. Commissioner, 225 F.2d 216, 218 (6th Cir. 1955), affg. in part, revg. in part a Memorandum Opinion of this Court; Wedvik v. Commissioner, 87 T.C. 1458, 1468-1469 (1986). In other words, respondent cannot simply rely on petitioner's failure to satisfy his burden of proof as to the underlying deficiency. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). *150 However, the fraud may be proved by circumstantial evidence and reasonable inferences drawn from proven facts because direct proof of a taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492, 499, 87 L. Ed. 418, 63 S. Ct. 364 (1943); Grudin v. Commissioner, 536 F.2d 295 (9th Cir. 1976), affg. a Memorandum Opinion of this Court; Klassie v. United States, 289 F.2d 96 (8th Cir. 1961); Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958); Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939); Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Nicholas v. Commissioner, 70 T.C. 1057 (1978); Rowlee v. Commissioner, 80 T.C. 1111 (1983). Petitioner's entire course of conduct may be examined in order to determine whether the requisite fraudulent intent is present. Stone v. Commissioner, 56 T.C. 213 (1971). From the record before us we are satisfied that petitioner was aware in 1980 that he was receiving taxable *151 income from BMV. He actively promoted BMV and used the proceeds from BMV checks to make advances to other individuals who wished to participate. Even though petitioner in 1980 had been a part owner for some period of time of an automobile dealership and was obviously aware of the importance of records he failed to keep any record of his BMV earnings. Such a failure is evidence of a fraudulent intent. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court; Grosshandler v. Commissioner, 75 T.C. 1 (1980); Harper v. Commissioner, 54 T.C. 1121, 1141 (1970); Parsons v. Commissioner, 43 T.C. 378 (1964). At trial petitioner's testimony and demeanor clearly demonstrated to our satisfaction that he was a reasonably intelligent and fairly well educated individual who over the years had been a relatively successful and knowledgeable businessman who was well aware of his duty to report the income earned from BMV and to pay the income tax due thereon. We conclude, therefore, that respondent has carried his burden of proving fraud by clear and convincing evidence. (5) *152 Timeliness of Notices of Deficiency Petitioners contend that since the notices of deficiency were mailed more than three years after petitioner's joint income tax return for 1980 was filed, an assessment for 1980 is barred by the three-year statute of limitations set forth in section 6501(a). Inasmuch as the 1980 return has been found to be fraudulent the exception in section 6501(c)(1) is applicable and the assessment for 1980 can be made at any time. Furthermore, it is apparent that a computation under Rule 155 will reveal that gross income was omitted from the 1980 return in an amount in excess of 25 percent of the gross income reported on the return. Therefore, the notices of deficiency were timely mailed within the six-year statute of limitations provided by section 6501(e)(1)(A). Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. As against the petitioner, Tammy S. Delaney, f.k.a. Tammy S. Mazzuca, respondent conceded the addition to tax under section 6653(b).↩
*. At trial petitioner was unable to deny that the final endorsements for Jo Mazzuca and Joseph Mazzuca on these three checks were not made by him.↩
3. There appears to be one check missing since there is an interruption in the consecutive and sequential numbering of the proof numbers on these 19 checks. Respondent is not charging petitioner with income for this missing check.↩